NOTICE: THIS DOCUMENT
CONTAINS SENSITIVE DATA

**CAUSE NO. <u>21-5527-442</u>**

FILED
DENTON COUNTY, TEXAS
2021 DEC 20 AM 9: 37
DAVID TRANTHAM
DISTRICT CLERK
BY _____
DEPUTY

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| ANNA MARIE STROH | § | |
| AND | § | 442nd JUDICIAL DISTRICT |
| JOHN STROH | § | |
| | § | |
| AND IN THE INTEREST OF | § | |
| K.M.S., A CHILD | § | DENTON COUNTY, TEXAS |
| | § | |

## AGEED FINAL DECREE OF DIVORCE

On this day, the Court heard this case.

### 1. APPEARANCES

Petitioner, Anna Marie Stroh, did not appear in person but has agreed to the terms of this order as evidenced by Petitioner's signature below.

Respondent, John Stroh, appeared in person with his counsel of record and announced an agreement was reached by the parties.

### 2. RECORD

The making of a record of testimony was ~~waived by the parties with the consent of the Court.~~ *recorded by the 442nd Court Report.*

### 3. JURISDICTION AND DOMICILE

The Court finds that the pleadings of Petitioner are in due form and contain all the allegations, information, and prerequisites required by law. The Court, after receiving evidence, finds that it has jurisdiction of this case and of all the parties and that at least sixty days have elapsed since the date the suit was filed.

The Court further finds that, at the time this suit was filed, Petitioner had been a domiciliary of Texas for the preceding six-month period and a resident of the county in which this suit was filed for the preceding ninety-day period. All persons entitled to citation were properly cited.

### 4. JURY

1

A jury was waived, and questions of fact and of law were submitted to the Court.

## 5. AGREEMENT OF PARTIES

The Court finds that the parties have entered into a written agreement as contained in this decree by virtue of having approved this decree as to both form and substance. To the extent permitted by law, the parties stipulate the agreement is enforceable as a contract. The Court approves the agreement of the parties as contained in this Agreed Final Decree of Divorce.

The agreements in this Agreed Final Decree of Divorce were reached through informal settlement negotiations between the parties. This Agreed Final Decree of Divorce is stipulated to represent a merger of all previous communication of the parties regarding the settlement of this matter. To the extent there exist any differences between the previous communications of the parties and this Agreed Final Decree of Divorce, this Agreed Final Decree of Divorce shall control in all instances.

## 6. DIVORCE

The Court FINDS that the parties were married on or about January 20th, 2007.

**IT IS ORDERED AND DECREED** that , Anna Marie Stroh, Petitioner, and , John Stroh, Respondent, are divorced and that the marriage between them is dissolved on the grounds of insupportability.

## 7. CHILDREN OF THE MARRIAGE

The Court finds that Petitioner and Respondent are the parents of the following child:

| Name | Sex | Birth Date | Home State | SSN: |
|------|-----|-----------|-----------|------|
| K█ M█ S█ | Female | █/2007 | Texas | Withheld |

## 8. AGREED PARENTING PLAN

The Court finds that the provisions in this decree relating to the rights and duties of the parties with relation to the children, possession of and access to the children, child support, and optimizing the development of a close and continuing relationship between each party and the children constitute the parties' agreed parenting plan.

## 9. CONSERVATORSHIP

The following orders are for the safety and welfare and in the best interest of the following child:

Name: K█ M█ S█
Sex:    Female
Birth date: █ 2007

2

## 9.1. Appointment as Joint Managing Conservators

IT IS ORDERED that, Anna Marie Stroh and John Stroh are appointed Joint Managing Conservators of the following child: K███ M███ S███.

## 9.2. Rights of Conservators at All Times

IT IS ORDERED that, at all times, Anna Marie Stroh and John Stroh, as parent joint managing conservators, shall each have the following rights:

1. the right to receive information from any other conservator of the child concerning the health, education, and welfare of the child;
2. the right to confer with the other parent to the extent possible before making a decision concerning the health, education, and welfare of the child;
3. the right of access to medical, dental, psychological, and educational records of the child;
4. the right to consult with a physician, dentist, or psychologist of the child;
5. the right to consult with school officials concerning the child's welfare and educational status, including school activities;
6. the right to attend school activities, including school lunches, performances, and field trips;
7. the right to be designated on the child's records as a person to be notified in case of an emergency;
8. the right to consent to medical, dental, and surgical treatment during an emergency involving an immediate danger to the health and safety of the child; and
9. the right to manage the estates of the child to the extent the estates have been created by the parent or the parent's family.

## 9.3. Duties of Conservators at All Times

IT IS ORDERED that, at all times, Anna Marie Stroh and John Stroh, as parent joint managing conservators, shall each have the following duties:

1. the duty to inform the other conservator of the child in a timely manner of significant information concerning the health, education, and welfare of the child;
2. the duty to inform the other conservator of the child if the conservator resides with for at least thirty days, marries, or intends to marry a person who the conservator knows is registered as a sex offender under chapter 62 of the Texas Code of Criminal Procedure or is currently charged with an offense for which on conviction the person would be required to register under that chapter. IT IS ORDERED that notice of this information shall be provided to the other conservator of the child as soon as practicable, but not later than the fortieth day after the date the conservator of the child begins to reside with the person or on the tenth day after the date the marriage occurs, as appropriate. IT IS ORDERED that the notice must include a description of the offense that is the basis of the person's requirement to register as a sex offender or of the offense with which the person is charged. WARNING: A CONSERVATOR COMMITS AN OFFENSE PUNISHABLE AS A CLASS C

MISDEMEANOR IF THE CONSERVATOR FAILS TO PROVIDE THIS NOTICE;

3.  the duty to inform the other conservator of the child if the conservator establishes a residence with a person who the conservator knows is the subject of a final protective order sought by an individual other than the conservator that is in effect on the date the residence with the person is established. IT IS ORDERED that notice of this information shall be provided to the other conservator of the child as soon as practicable, but not later than the thirtieth day after the date the conservator establishes residence with the person who is the subject of the final protective order. WARNING: A CONSERVATOR COMMITS AN OFFENSE PUNISHABLE AS A CLASS C MISDEMEANOR IF THE CONSERVATOR FAILS TO PROVIDE THIS NOTICE;

4.  the duty to inform the other conservator of the child if the conservator resides with, or allows unsupervised access to a child by, a person who is the subject of a final protective order sought by the conservator after the expiration of sixty-day period following the date the final protective order is issued. IT IS ORDERED that notice of this information shall be provided to the other conservator of the child as soon as practicable, but not later than the ninetieth day after the date the final protective order was issued. WARNING: A CONSERVATOR COMMITS AN OFFENSE PUNISHABLE AS A CLASS C MISDEMEANOR IF THE CONSERVATOR FAILS TO PROVIDE THIS NOTICE; and

5.  the duty to inform the other conservator of the child if the conservator is the subject of a final protective order issued after the date of the order establishing conservatorship. IT IS ORDERED that notice of this information shall be provided to the other conservator of the child as soon as practicable, but not later than the thirtieth day after the date the final protective order was issued. WARNING: A CONSERVATOR COMMITS AN OFFENSE PUNISHABLE AS A CLASS C MISDEMEANOR IF THE CONSERVATOR FAILS TO PROVIDE THIS NOTICE.

## 9.4. Rights and Duties of Conservators During Periods of Possession

IT IS ORDERED that, during their respective periods of possession, Anna Marie Stroh and John Stroh, as parent joint managing conservators, shall each have the following rights and duties:

1.  the duty of care, control, protection, and reasonable discipline of the child;
2.  the duty to support the child, including providing the child with clothing, food, shelter, and medical and dental care not involving an invasive procedure;
3.  the right to consent for the child to medical and dental care not involving an invasive procedure; and
4.  the right to direct the moral and religious training of the child.

## 9.5. Other Rights and Duties of John Stroh

IT IS ORDERED that John Stroh, as a parent joint managing conservator, shall have the following rights and duty:

1. the right, subject to the agreement of the other parent conservator, to consent to medical, dental, and surgical treatment involving invasive procedures;
2. the independent right to consent to psychiatric and psychological treatment of the child;
3. the independent right to represent the child in legal action and to make other decisions of substantial legal significance concerning the child;
4. the independent right to consent to marriage and to enlistment in the armed forces of the United States;
5. the right, subject to the agreement of the other parent conservator, to make decisions concerning the child's education;
6. except as provided by section 264.0111 of the Texas Family Code, the independent right to the services and earnings of the child;
7. except when a guardian of the child's estates or a guardian or attorney ad litem has been appointed for the child, the independent right to act as an agent of the child in relation to the child's estates if the child's action is required by a state, the United States, or a foreign government; and
8. the independent duty to manage the estates of the child to the extent the estates have been created by community property or the joint property of the parent.

### 9.6. Other Rights and Duty of Anna Marie Stroh

IT IS ORDERED that Anna Marie Stroh, as a parent joint managing conservator, shall have the following rights and duty:

1. The exclusive right to designate the child's primary residence subject to the geographic restriction below.
2. the right to consent to medical, dental, and surgical treatment involving invasive procedures;
3. the independent right to consent to psychiatric and psychological treatment of the child;
4. the exclusive right to receive and give receipt for periodic payments for the support of the child and to hold or disburse these funds for the benefit of the child;
5. the independent right to represent the child in legal action and to make other decisions of substantial legal significance concerning the child;
6. the independent right to consent to marriage and to enlistment in the armed forces of the United States;
7. the right, subject to the agreement of the other parent conservator, to make decisions concerning the child's education;
8. except as provided by section 264.0111 of the Texas Family Code, the independent right to the services and earnings of the child;
9. except when a guardian of the child's estates or a guardian or attorney ad litem has been appointed for the child, the independent right to act as an agent of the child in relation to the child's estates if the child's action is required by a state, the United States, or a foreign government; and
10. the independent duty to manage the estates of the child to the extent the estates have been created by community property or the joint property of the parents.

### 9.7. Geographic Restriction

The Court finds that, in accordance with section 153.001 of the Texas Family Code, it is the public policy of Texas to assure that children will have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child, to provide a safe, stable, and nonviolent environment for the child, and to encourage parents to share in the rights and duties of raising their child after the parents have separated.

IT IS ORDERED that the primary residence of the children shall be within Denton County, Texas or a contiguous county thereto, and that the parties shall not remove the child from Dallas within Denton County, Texas or a contiguous county thereto for the purpose of changing the primary residence of the child until this geographic restriction is modified by further order of the court of continuing jurisdiction or by a written agreement that is signed by the parties and filed with that court.

## 10. POSSESSION AND ACCESS

### Possession Order

IT IS ORDERED that each conservator shall comply with all terms and conditions of this Possession Order. IT IS ORDERED that this Possession Order is effective immediately after the written recommendation of the Parenting Facilitator and applies to all periods of possession occurring on and after the date the Court signs this Possession Order. IT IS, THEREFORE, ORDERED:

### 10.1.    Definitions

In this Custom Possession Order "school" means the elementary or secondary school in which the child is enrolled or, if the child is not enrolled in an elementary or secondary school, the public school district in which the child primarily resides.

In this Custom Possession Order "child" includes each child, whether one or more, who is a subject of this suit while that child is under the age of eighteen years and not otherwise emancipated.

### 10.2.    Mutual Agreement or Specified Terms for Possession

IT IS ORDERED that the conservators shall have possession of the child at times mutually agreed to in advance by the parties, and, in the absence of mutual agreement, it is ORDERED that the conservators shall have possession of the child under the specified terms set out in this Custom Possession Order.

### 10.3.    Parents Who Reside 100 Miles or Less Apart

Except as otherwise expressly provided in this Expanded Standard Possession Order, when JOHN STROH resides 100 miles or less from the primary residence of the child, JOHN STROH shall have the right to possession of the child as follows:

6

1. Weekends –

On weekends that occur during the regular school term, beginning at the time the child's school is regularly dismissed, on the first, third, and fifth Friday of each month and ending at the time the child's school resumes after the weekend.

On weekends that do not occur during the regular school term, beginning at 6:00 p.m., on the first, third, and fifth Friday of each month and ending at 8:30 a.m. on the following Monday.

2. Weekend Possession Extended by a Holiday –

Except as otherwise expressly provided in this Expanded Standard Possession Order, if a weekend period of possession by JOHN STROH begins on a student holiday or a teacher in-service day that falls on a Friday during the regular school term, as determined by the school in which the child is enrolled, or a federal, state, or local holiday that falls on a Friday during the summer months when school is not in session, that weekend period of possession shall begin at the time the child's school is regularly dismissed on the Thursday immediately preceding the student holiday or teacher in-service day and 6:00 p.m. on the Thursday immediately preceding the federal, state, or local holiday during the summer months.

Except as otherwise expressly provided in this Expanded Standard Possession Order, if a weekend period of possession by JOHN STROH ends on or is immediately followed by a student holiday or a teacher in-service day that falls on a Monday during the regular school term, as determined by the school in which the child is enrolled, or a federal, state, or local holiday that falls on a Monday during the summer months when school is not in session, that weekend period of possession shall end at 6:00 p.m. on that Monday.

3. Thursdays –

On Thursday of each week during the regular school term, beginning at the time the child's school is regularly dismissed and ending at the time the child's school resumes on Friday.

4. Spring Vacation in Even-Numbered Years - In even-numbered years, beginning at the time the child's school, based on the school the child would be enrolled in if the child were of school age, is dismissed for the school's spring vacation and ending at 6:00 p.m. on the day before school resumes after that vacation.

5. Extended Summer Possession by JOHN STROH –

With Written Notice by April 1 - If JOHN STROH gives ANNA MARIE STROH written notice by April 1 of a year specifying an extended period or periods

7

of summer possession for that year, JOHN STROH shall have possession of the child for thirty days beginning no earlier than the day after the child's school is dismissed for the summer vacation and ending no later than seven days before school resumes at the end of the summer vacation in that year, to be exercised in no more than two separate periods of at least seven consecutive days each, as specified in the written notice. These periods of possession shall begin and end at 6:00 p.m. on each applicable day.

Without Written Notice by April 1 - If JOHN STROH does not give ANNA MARIE STROH written notice by April 1 of a year specifying an extended period or periods of summer possession for that year, JOHN STROH shall have possession of the child for thirty consecutive days in that year beginning at 6:00 p.m. on July 1 and ending at 6:00 p.m. on July 31.

Notwithstanding the Thursday periods of possession during the regular school term and the weekend periods of possession ORDERED for JOHN STROH, it is expressly ORDERED that ANNA MARIE STROH shall have a superior right of possession of the child as follows:

1.      Spring Vacation in Odd-Numbered Years - In odd-numbered years, beginning at the time the child's school is dismissed for the school's spring vacation and ending at 6:00 p.m. on the day before school resumes after that vacation.

2.      Summer Weekend Possession by ANNA MARIE STROH - If ANNA MARIE STROH gives JOHN STROH written notice by April 15 of a year, ANNA MARIE STROH shall have possession of the child on any one weekend beginning at 6:00 p.m. on Friday and ending at 6:00 p.m. on the following Sunday during any one period of the extended summer possession by JOHN STROH in that year, provided that ANNA MARIE STROH picks up the child from JOHN STROH and returns the child to that same place and that the weekend so designated does not interfere with Mother's Day possession. JOHN STROH shall give ANNA MARIE STROH written notice no later than the 15th day before the Friday that begins ANNA MARIE STROH's Summer Weekend possession the location where ANNA MARIE STROH shall pick up and return the child.

3.      Extended Summer Possession by ANNA MARIE STROH - If ANNA MARIE STROH gives JOHN STROH written notice by April 15 of a year or gives JOHN STROH fourteen days' written notice on or after April 16 of a year, ANNA MARIE STROH may designate one weekend beginning no earlier than the day after the child's school is dismissed for the summer vacation and ending no later than seven days before school resumes at the end of the summer vacation, during which an otherwise scheduled weekend period of possession by JOHN STROH shall not take place in that year, provided that the weekend so designated does not interfere with JOHN STROH's period or periods of extended summer possession or with Mother's Day possession.

8

**10.4.  Parents Who Reside More than 100 Miles Apart**

        Except as otherwise expressly provided in this Expanded Standard Possession Order, when JOHN STROH resides more than 100 miles from the residence of the child, JOHN STROH shall have the right to possession of the child as follows:

        1.      Weekends - Unless JOHN STROH elects the alternative period of weekend possession described in the next paragraph, JOHN STROH shall have the right to possession of the child on weekends that occur during the regular school term, beginning at the time the child's school is regularly dismissed, on the first, third, and fifth Friday of each month and ending at the time the child's school resumes after the weekend, and on weekends that do not occur during the regular school term, beginning at 6:00 p.m. on the first, third and fifth Friday of each month and ending at 6:00 p.m. on the following Sunday.

        Alternate Weekend Possession - In lieu of the weekend possession described in the foregoing paragraph, JOHN STROH shall have the right to possession of the child not more than one weekend per month of JOHN STROH's choice beginning at 6:00 p.m. on the day school recesses for the weekend and ending at 6:00 p.m. on the day before school resumes after the weekend. JOHN STROH may elect an option for this alternative period of weekend possession by giving written notice to ANNA MARIE STROH within ninety days after the parties begin to reside more than 100 miles apart. If JOHN STROH makes this election, JOHN STROH shall give ANNA MARIE STROH fourteen days' written or telephonic notice preceding a designated weekend. The weekends chosen shall not conflict with the provisions regarding Christmas, Thanksgiving, the child's birthday, and Father's Day possession below.

        2.      Weekend Possession Extended by a Holiday –

        Except as otherwise expressly provided in this Expanded Standard Possession Order, if a weekend period of possession by JOHN STROH begins on a student holiday or a teacher in-service day that falls on a Friday during the regular school term, as determined by the school in which the child is enrolled, or a federal, state, or local holiday during the summer months when school is not in session, that weekend period of possession shall begin at the time the child's school is regularly dismissed on the Thursday immediately preceding the student holiday or teacher in-service day and 6:00 p.m. on the Thursday immediately preceding the federal, state, or local holiday during the summer months

        Except as otherwise expressly provided in this Expanded Standard Possession Order, if a weekend period of possession by JOHN STROH ends on or is immediately followed by a student holiday or a teacher in-service day that falls on a Monday during the regular school term, as determined by the school in which the child is enrolled, or a federal, state, or local holiday that falls on a Monday

9

during the summer months when school is not in session, that weekend period of possession shall end at 6:00 p.m. on that Monday.

3.      Spring Vacation in All Years - Every year, beginning at 6:00 p.m. on the day the child is dismissed from school for the school's spring vacation and ending at 6:00 p.m. on the day before school resumes after that vacation.

4.      Extended Summer Possession by JOHN STROH –
With Written Notice by April 1 - If JOHN STROH gives ANNA MARIE STROH written notice by April 1 of a year specifying an extended period or periods of summer possession for that year, JOHN STROH shall have possession of the child for forty-two days beginning no earlier than the day after the child's school is dismissed for the summer vacation and ending no later than seven days before school resumes at the end of the summer vacation in that year, to be exercised in no more than two separate periods of at least seven consecutive days each, as specified in the written notice. These periods of possession shall begin and end at 6:00 p.m. on each applicable day.

Without Written Notice by April 1 - If JOHN STROH does not give ANNA MARIE STROH written notice by April 1 of a year specifying an extended period or periods of summer possession for that year, JOHN STROH shall have possession of the child for forty-two consecutive days beginning at 6:00 p.m. on June 15 and ending at 6:00 p.m. on July 27 of that year.

Notwithstanding the weekend periods of possession ORDERED for JOHN STROH, it is expressly ORDERED that ANNA MARIE STROH shall have a superior right of possession of the child as follows:

1.      Summer Weekend Possession by ANNA MARIE STROH - If ANNA MARIE STROH gives JOHN STROH written notice by April 15 of a year, ANNA MARIE STROH shall have possession of the child on any one weekend beginning at 6:00 p.m. on Friday and ending at 6:00 p.m. on the following Sunday during any one period of possession by JOHN STROH during JOHN STROH's extended summer possession in that year, provided that if a period of possession by JOHN STROH in that year exceeds thirty days, ANNA MARIE STROH may have possession of the child under the terms of this provision on any two nonconsecutive weekends during that period and provided that ANNA MARIE STROH picks up the child from JOHN STROH and returns the child to that same place and that the weekend so designated does not interfere with Father's Day possession. JOHN STROH shall give ANNA MARIE STROH written notice no later than the 15th day before the Friday that begins ANNA MARIE STROH's Summer Weekend possession the location where ANNA MARIE STROH shall pick up and return the child.

2.      Extended Summer Possession by ANNA MARIE STROH - If ANNA MARIE STROH gives JOHN STROH written notice by April 15 of a year,

ANNA MARIE STROH may designate twenty-one days beginning no earlier than the day after the child's school is dismissed for the summer vacation and ending no later than seven days before school resumes at the end of the summer vacation in that year, to be exercised in no more than two separate periods of at least seven consecutive days each, during which JOHN STROH shall not have possession of the child, provided that the period or periods so designated do not interfere with JOHN STROH's period or periods of extended summer possession or with Mother's Day possession. These periods of possession shall begin and end at 6:00 p.m. on each applicable day.

**10.5.** **Holidays Unaffected by Distance**

Notwithstanding the weekend periods of possession of JOHN STROH, ANNA MARIE STROH and JOHN STROH shall have the right to possession of the child as follows:

1.      Christmas Holidays in Even-Numbered Years - In even-numbered years, JOHN STROH shall have the right to possession of the child beginning at 6:00 p.m. on the day the child is dismissed from school for the Christmas school vacation and ending at noon on December 28, and ANNA MARIE STROH shall have the right to possession of the child beginning at noon on December 28 and ending at 6:00 p.m. on the day before school resumes after that Christmas school vacation.

2.      Christmas Holidays in Odd-Numbered Years - In odd-numbered years, ANNA MARIE STROH shall have the right to possession of the child beginning at 6:00 p.m. on the day the child is dismissed from school for the Christmas school vacation and ending at noon on December 28, and JOHN STROH shall have the right to possession of the child beginning at noon on December 28 and ending at 6:00 p.m. on the day before school resumes after that Christmas school vacation.

3.      Thanksgiving in Odd-Numbered Years - In odd-numbered years, JOHN STROH shall have the right to possession of the child beginning at 6:00 p.m. on the day the child is dismissed from school for the Thanksgiving holiday and ending at 6:00 p.m. on the Sunday following Thanksgiving.

4.      Thanksgiving in Even-Numbered Years - In even-numbered years, ANNA MARIE STROH shall have the right to possession of the child beginning at 6:00 p.m. on the day the child is dismissed from school for the Thanksgiving holiday and ending at 6:00 p.m. on the Sunday following Thanksgiving.

5.      Child's Birthday - If a parent is not otherwise entitled under this Possession Order to present possession of the child on the child's birthday, that parent shall have possession of the child beginning at 6:00 p.m. and ending at 8:00 p.m. on that day, provided that that parent picks up the child from the other parent's residence and returns the child to that same place.

6.      Father's Day - JOHN STROH shall have the right to possession of the child each year, beginning at 6:00 p.m. on the Friday preceding Father's Day and ending at 6:00 p.m. on Father's Day, provided that if JOHN STROH is not otherwise entitled under this Possession Order to present possession of the child, he shall pick up the child from ANNA MARIE STROH's residence and return the child to that same place.

7.      Mother's Day - ANNA MARIE STROH shall have the right to possession of the child each year, beginning at 6:00 p.m. on the Friday preceding Mother's Day and ending at 6:00 p.m. on Mother's Day, provided that if ANNA MARIE STROH is not otherwise entitled under this Possession Order to present possession of the child, she shall pick up the child from JOHN STROH's residence and return the child to that same place.

### 10.6.   Undesignated Periods of Possession

ANNA MARIE STROH shall have the right of possession of the child at all other times not specifically designated in this Possession Order for JOHN STROH.

### 10.7   General Terms and Conditions

Except as otherwise expressly provided in this Possession Order, the terms and conditions of possession of the child that apply regardless of the distance between the residence of a parent and the child are as follows:

1.      Surrender of Child by ANNA MARIE STROH - ANNA MARIE STROH is ORDERED to surrender the child to JOHN STROH at the beginning of each period of JOHN STROH's possession at the residence of ANNA MARIE STROH.

2.      Surrender of Child by JOHN STROH - JOHN STROH is ORDERED to surrender the child to ANNA MARIE STROH at the residence of JOHN STROH at the end of each period of possession.

3.      Surrender of Child by JOHN STROH - JOHN STROH is ORDERED to surrender the child to ANNA MARIE STROH, if the child is in JOHN STROH's possession or subject to JOHN STROH's control, at the beginning of each period of ANNA MARIE STROH's exclusive periods of possession, at the place designated in this Possession Order.

4.      Return of Child by ANNA MARIE STROH - ANNA MARIE STROH is ORDERED to return the child to JOHN STROH, if JOHN STROH is entitled to possession of the child, at the end of each of ANNA MARIE STROH's exclusive periods of possession, at the place designated in this Possession Order.

5.      Personal Effects - Each conservator is ORDERED to return with the child the personal effects that the child brought at the beginning of the period of possession.

6.      Designation of Competent Adult - Each conservator may designate any competent adult to pick up and return the child, as applicable. IT IS ORDERED that a conservator or a designated competent adult be present when the child is picked up or returned.

7.      Inability to Exercise Possession - Each conservator is ORDERED to give notice to the person in possession of the child on each occasion that the conservator will be unable to exercise that conservator's right of possession for any specified period.

8.      Written Notice - Written notice, including notice provided by electronic mail or facsimile, shall be deemed to have been timely made if received or, if applicable, postmarked before or at the time that notice is due. Each conservator is ORDERED to notify the other conservator of any change in the conservator's electronic mail address or facsimile number within twenty-four hours after the change.

This concludes the Possession Order.

## 10.8.    Duration

The periods of possession ordered above apply to each child the subject of this suit while that child is under the age of eighteen years and not otherwise emancipated or until further order of this Court.

## 10.9.    No Family Violence

It has been represented to the Court that there has been no pattern of child neglect or family violence by any party to this case within two years preceding the filing of this case or during the pendency of this case.

## 10.10.   Termination of Orders

The provisions of this Agreed Final Decree of Divorce relating to conservatorship, possession, or access terminate on the remarriage of ANNA MARIE STROH to JOHN STROH unless a nonparent or agency has been appointed conservator of the child under chapter 153 of the Texas Family Code.

## 11. CHILD SUPPORT

### 11.1. Statement on Guidelines

In accordance with Texas Family Code section 154.130, the Court makes the following findings and conclusions regarding the child support order in accordance with the agreement and representations f the parties as of the date of this order:

1.      The monthly net resources of John Stroh is in excess of $9,200.00 per month;

2.      John Stroh has no other children under the age of 18 to whom he owes a support obligation;

3.      The court has applied a rate of 20% to the first $9,200.00 of the obligor's monthly net resources in accordance with the child support guidelines of the Texas Family Code.

### 11.2. Child Support Obligation

IT IS ORDERED that JOHN STROH is obligated to pay and shall pay to ANNA MARIE STROH child support of $1,840.00 dollars per month, with the first payment being due and payable on January 1, 2022, and a like payment being due and payable on the first day of each month thereafter until the first month following the date of the earliest occurrence of one of the events specified below:

1.      the child reaches the age of eighteen years or graduates from high school, whichever occurs later, subject to the provisions for support beyond the age of eighteen years set out below;

2.      the child marries;

3.      the child dies;

4.      the child enlists in the armed forces of the United States and begins active service as defined by section 101 of title 10 of the United States Code; or

5.      the child's disabilities are otherwise removed for general purposes.

If a child is eighteen years of age and has not graduated from high school, IT IS ORDERED that JOHN STROH's obligation to pay child support to ANNA MARIE STROH shall not terminate but shall continue for as long as the child is enrolled—

1.      under chapter 25 of the Texas Education Code in an accredited secondary school in a program leading toward a high school diploma or under section 130.008 of the Education Code in courses for joint high school and junior college credit and is complying with the minimum attendance requirements of subchapter C of chapter 25 of the Education Code or

2. on a full time basis in a private secondary school in a program leading toward a high school diploma and is complying with the minimum attendance requirements imposed by that school. If either child is eighteen years of age and has not graduated from high school.

### 11.3. WITHHOLDING FROM EARNINGS

IT IS ORDERED that any employer of JOHN STROH shall be ordered to withhold from earnings for child support from the disposable earnings of JOHN STROH for the support of K███ M███ S███.

IT IS FURTHER ORDERED that all amounts withheld from the disposable earnings of JOHN STROH by the employer and paid in accordance with the order to that employer shall constitute a credit against the child support obligation. Payment of the full amount of child support ordered paid by this decree through the means of withholding from earnings shall discharge the child support obligation. If the amount withheld from earnings and credited against the child support obligation is less than 100 percent of the amount ordered to be paid by this decree, the balance due remains an obligation of JOHN STROH, and it is hereby ORDERED that JOHN STROH pay the balance due directly to the state disbursement unit specified below.

On this date the Court authorized an Income Withholding for Support.

### 11.4. SUSPENSION OF WITHHOLDING FROM EARNINGS

The Court finds that the parties have agreed and good cause exists that no order to withholding from earnings for child support should be delivered to any employer of JOHN STROH, nor should any qualified domestic relations order seeking withholding from earnings from a retirement plan of JOHN STROH be delivered to any retirement plan, as long as no delinquency or other violation of this child support order occurs. For purposes of this provision, a delinquency has occurred if JOHN STROH has been in arrears for an amount due for more than thirty days or the amount of the arrearages equals or is greater than the amount due for a one-month period. If a delinquency or other violation occurs, the clerk shall deliver the order to withhold earnings as provided above.

Accordingly, IT IS ORDERED that, as long as no delinquency or other violation of this child support order occurs, all payments shall be made through the state disbursement unit and thereafter promptly remitted to ANNA MARIE STROH for the support of the child. If a delinquency or other violation occurs, all payments shall be made in accordance with the order to withhold earnings as provided above.

### 11.5. PAYMENT

IT IS ORDERED that all payments shall be made through the state disbursement unit at Texas Child Support Disbursement Unit, P.O. Box 659791, San Antonio, Texas 78265-9791, and then remitted by that agency to ANNA MARIE STROH for the support of the child.

### 11.6.  CHANGE OF EMPLOYMENT

IT IS FURTHER ORDERED that JOHN STROH shall notify this Court and ANNA MARIE STROH by U.S. certified mail, return receipt requested, of any change of address and of any termination of employment.  This notice shall be given no later than seven days after the change of address or the termination of employment.  This notice or a subsequent notice shall also provide the current address of JOHN STROH and the name and address of his current employer, whenever that information becomes available.

### 11.7.  CLERK'S DUTIES

IT IS ORDERED that, on the request of a prosecuting attorney, the title IV-D agency, the friend of the Court, a domestic relations office, ANNA MARIE STROH, JOHN STROH or an attorney representing ANNA MARIE STROH, JOHN STROH, the clerk of this Court shall cause a certified copy of the Income Withholding for Support to be delivered to any employer.

## 12. MEDICAL AND DENTAL SUPPORT

IT IS ORDERED that John Stroh and Anna Marie Stroh shall each provide medical and dental support for each child as set out in this order as child support for as long as the Court may order John Stroh and Anna Marie Stroh to provide support for the child under sections 154.001 and 154.002 of the Texas Family Code.  Beginning on the day John Stroh and Anna Marie Stroh's actual or potential obligation to support a child under sections 154.001 and 154.002 of the Family Code terminates, IT IS ORDERED that John Stroh and Anna Marie Stroh are discharged from the obligations set forth in this medical support order and dental support order with respect to that child, except for any failure by a parent to fully comply with those obligations before that date.

### 12.1.  Definitions

"Health Insurance" means insurance coverage that provides basic health-care services, including usual physician services, office visits, hospitalization, and laboratory, X-ray, and emergency services, that may be provided through a health maintenance organization or other private or public organization, other than medical assistance under chapter 32 of the Texas Human Resources Code.

"Reasonable cost" means the total cost of health insurance coverage for all child for which Anna Marie Stroh is responsible under a medical support order that does not exceed 9 percent of Anna Marie Stroh's annual resources, as described by section 154.062(b) of the Texas Family Code.

"Dental insurance" means insurance coverage that provides preventive dental care and other dental services, including usual dentist services, office visits, examinations, X-rays, and emergency services, that may be provided through a single service health maintenance organization or other private or public organization.

"Reasonable cost" of dental insurance means the total cost of dental insurance coverage for all child for which John Stroh is responsible under a medical support order that does not exceed 1.5 percent of John Stroh's annual resources, as described by section 154.062(b) of the Texas

16

Family Code.

"Health-care expenses" include, without limitation, medical, surgical, prescription drug, mental health-care services, dental, eye care, ophthalmological, and orthodontic charges but do not include expenses for travel to and from the provider or for nonprescription medication.

"Health-care expenses that are not reimbursed by insurance" ("unreimbursed expenses") include related copayments and deductibles.

"Furnish" means -

    a.    to hand deliver the document by a person eighteen years of age or older either to the recipient or to a person who is eighteen years of age or older and permanently resides with the recipient;

    b.    to deliver the document to the recipient by first-class mail or by certified mail, return receipt requested, to the recipient's last known mailing or residence address;

    c.    to deliver the document to the recipient at the recipient's last known mailing or residence address using any person or entity whose principal business is that of a courier or deliverer of papers or documents either within or outside the United States; or

    d.    to deliver the document to the recipient at the recipient's electronic mail address as follows:

        John Stroh:        johntstroh65@gmail.com

        Anna Marie Stroh:    annamariestroh1032@gmail.com

## 12.2.    Findings on Availability of Health Insurance

Having considered the cost, accessibility, and quality of health insurance coverage available to the parties, the Court finds:

Health insurance is available or is in effect for the child through John Stroh's employment or membership in a union, trade association, or other organization at a reasonable cost.

IT IS FURTHER FOUND that the following orders regarding health-care coverage are in the best interest of the child.

## 12.3.    Provision of Health-Care Coverage

As child support, John Stroh is ORDERED to maintain health insurance for each child as long as child support is payable for that child. John Stroh is ORDERED -

    a.    to furnish to each conservator of the child the following information no later than

the thirtieth day after the date the notice of the rendition of this order is received:

    i.       John Stroh's Social Security number;

    ii.     the name and address of John Stroh's employer;

    iii.    whether John Stroh's employer is self-insured or has health insurance available;

    iv.    proof that health insurance has been provided for each child;

    v.     if John Stroh's employer has health insurance available:

        (a)    the name of the health insurance carrier;

        (b)    the number of the policy;

        (c)    a copy of the policy;

        (d)    a schedule of benefits;

        (e)    a health insurance membership card;

        (f)    claim forms, and

        (g)    any other information necessary to submit a claim; and

    vi.    if John Stroh's employer is self-insured:

        (a)    a copy of the schedule of benefits;

        (b)    a membership card;

        (c)    claim forms; and

        (d)    any other information necessary to submit a claim;

b.    to furnish to each conservator of the child a copy of any renewals or changes to the health insurance coverage of a child and additional information regarding health insurance coverage of the child not later than the fifteenth day after John Stroh receives or is provided with the renewal, change, or additional information;

c.    to notify each conservator of the child of any termination or lapse of the health insurance coverage of a child no later than the fifteenth day after the date of the termination or lapse;

d.    after termination or lapse of health insurance coverage, to notify each conservator of the child of the availability to John Stroh of additional health insurance for the child not later than the fifteenth day after the date the insurance becomes available;

e. after termination or lapse of health insurance coverage, to enroll the child in a health insurance plan that is available to John Stroh at reasonable cost at the next available enrollment period.

Pursuant to section 1504.051 of the Texas Insurance Code, IT IS ORDERED that if John Stroh is eligible for dependent health coverage but fails to apply to obtain coverage for the child, the insurer shall enroll the child on application of John Stroh or others as authorized by law.

### 12.4. Findings on Availability of Dental Insurance

Having considered the cost, accessibility, and quality of dental insurance coverage available to the parties, the Court finds:

Dental insurance is available or is in effect for the child through John Stroh's employment or membership in a union, trade association, or other organization at a reasonable cost.

IT IS FURTHER FOUND that the following orders regarding dental coverage are in the best interest of the child.

### 12.5. Provision of Dental Coverage

As child support, John Stroh is ORDERED to maintain dental insurance for each child as long as child support is payable for that child. John Stroh is ORDERED-

a. to furnish to each conservator of the child the following information no later than the thirtieth day after the date the notice of the rendition of this order is received:

i. John Stroh's Social Security number;

ii. the name and address of John Stroh's employer;

iii. whether John Stroh's employer is self-insured or has dental insurance available;

iv. proof that dental insurance has been provided for each child;

v. if John Stroh's employer has dental insurance available:

(a) the name of the dental insurance carrier;

(b) the number of the policy;

(c) a copy of the policy;

(d) a schedule of benefits;

(e) a dental insurance membership card;

<div style="margin-left:2em">

(f)    claim forms, and

(g)    any other information necessary to submit a claim; and

vi.    if John Stroh's employer is self-insured:

(a)    a copy of the schedule of benefits;

(b)    a membership card;

(c)    claim forms; and

(d)    any other information necessary to submit a claim;

</div>

b.    to furnish to each conservator of the child a copy of any renewals or changes to the dental insurance coverage of a child and additional information regarding dental insurance coverage of the child not later than the fifteenth day after John Stroh receives or is provided with the renewal, change, or additional information;

c.    to notify each conservator of the child of any termination or lapse of the dental insurance coverage of a child no later than the fifteenth day after the date of the termination or lapse;

d.    after termination or lapse of dental insurance coverage, to notify each conservator of the child of the availability to John Stroh of additional dental insurance for the child not later than the fifteenth day after the date the insurance becomes available;

e.    after termination or lapse of dental insurance coverage, to enroll the child in a dental insurance plan that is available to John Stroh at reasonable cost at the next available enrollment period.

Pursuant to section 1504.051 of the Texas Insurance Code, IT IS ORDERED that if John Stroh is eligible for dependent dental coverage but fails to apply to obtain coverage for the child, the insurer shall enroll the child on application of Anna Marie Stroh or others as authorized by law.

## 12.6.    Allocation of Unreimbursed Expenses

Pursuant to section 154.183(c) of the Texas Family Code, the reasonable and necessary health-care expenses of the child that are not reimbursed by health insurance or dental insurance are allocated as follows: John Stroh is ORDERED to pay 50 percent and Anna Marie Stroh is ORDERED to pay 50 percent of the unreimbursed health-care expenses if, at the time the expenses are incurred, John Stroh is providing health insurance and John Stroh is providing dental insurance as ordered.

The conservator who incurs a health-care expense on behalf of a child is ORDERED to furnish to the other conservator all forms, receipts, bills, statements, and explanations of benefits reflecting the uninsured portion of the health-care expenses within thirty (30) days after the

incurring conservator receives them. If the incurring conservator furnishes to the nonincurring conservator the forms, receipts, bills, statements, and explanations of benefits reflecting the unreimbursed portion of the health-care expenses within thirty (30) days after the incurring conservator receives them, the nonincurring conservator is ORDERED to pay the non-incurring conservator's percentage of the unreimbursed portion of the health-care expenses either by paying the health-care provider directly or by reimbursing the incurring conservator for any advance payment exceeding the incurring conservator's percentage of the unreimbursed portion of the health-care expenses within thirty days after the nonincurring conservator receives the forms, receipts, bills, statements, and/or explanations of benefits. If the incurring conservator fails to furnish to the nonincurring conservator the forms, receipts, bills, statements, and explanations of benefits reflecting the unreimbursed portion of the health-care expenses within thirty days after the incurring conservator receives them, the nonincurring conservator is ORDERED to pay the nonincurring conservator's percentage of the unreimbursed portion of the health-care expenses either by paying the health-care provider directly or by reimbursing the incurring conservator's percentage of the unreimbursed portion of the health-care expenses within 120 days after the nonincurring conservator receives the forms, receipts, bills, statements, and/or explanations of benefits.

### 12.7.    Secondary Coverage

IT IS ORDERED that if a conservator provides secondary health insurance coverage or dental insurance coverage for the child, the conservators shall cooperate fully with regard to the handling and filing of claims with the insurance carrier providing the coverage in order to maximize the benefits available to the child and to ensure that the conservator who pays for health-care expenses for the child is reimbursed for the payment from both carriers to the fullest extent possible.

### 12.8.    Compliance with Insurance Company Requirements

Each conservator is ORDERED to conform to all requirements imposed by the terms and conditions of any policy of health or dental insurance covering the child in order to assure the maximum reimbursement or direct payment by any insurance company of the incurred health-care expense, including but not limited to requirements for advance notice to any carrier, second opinions, and the like. Each conservator is ORDERED to use "preferred providers," or services within the health maintenance organization or preferred provider network, if applicable. Disallowance of the bill by an insurance company shall not excuse the obligation of a conservator to make payment. Excepting emergency health-care expenses incurred on behalf of the child, if a party incurs health-care expenses for the child using "out-of-network" health-care providers or services, or fails to follow the insurance company procedures or requirements, that conservator shall pay all such health-care expenses incurred absent (1) written agreement of the conservators allocating such health-care expenses or (2) further order of the Court.

### 12.9.    Claims

Except as provided in this paragraph, a conservator who is not carrying the health or dental insurance policy covering the child is ORDERED to furnish to the party carrying the policy, within fifteen days of receiving them, all forms, receipts, bills, and statements reflecting the health-care

21

expenses the conservator not carrying the policy incurs on behalf of the child. In accordance with section 1204.251 and 1504.055(a) of the Texas Insurance Code, IT IS ORDERED that the conservator who is not carrying the health or dental insurance policy covering the child, at that conservator's option, or others as authorized by law, may file any claims for health-care expenses directly with the insurance carrier with and from whom coverage is provided for the benefit of the child and receive payments directly from the insurance company. Further, for the sole purpose of section 1204.251 of the Texas Insurance Code, John Stroh is designated the managing conservator or possessory conservator of the child.

The conservator who is carrying the health or dental insurance policy covering the child is ORDERED to submit all forms required by the insurance company for payment or reimbursement of health-care expenses incurred by either party on behalf of a child to the insurance carrier within fifteen days of that party's receiving any form, receipt, bill, or statement reflecting the expenses.

### 12.10.    Constructive Trust for Payments Received

IT IS ORDERED that any insurance payments received by a conservator from the health or dental insurance carrier as reimbursement for health-care expenses incurred by or on behalf of a child shall belong to the conservator who paid those expenses. IT IS FURTHER ORDERED that the conservator receiving the insurance payments is designated a constructive trustee to receive any insurance checks or payments for health-care expenses paid by the other conservator, and the conservator carrying the policy shall endorse and forward the checks or payments, along with any explanation of benefits received, to the other conservator within three days of receiving them.

### 12.11.    WARNING

A PARENT ORDERED TO PROVIDE HEALTH INSURANCE OR DENTAL INSURANCE OR TO PAY THE OTHER PARENT ADDITIONAL CHILD SUPPORT FOR THE COST OF HEALTH INSURANCE OR DENTAL INSURANCE WHO FAILS TO DO SO IS LIABLE FOR NECESSARY MEDICAL EXPENSES OF THE CHILD, WITHOUT REGARD TO WHETHER THE EXPENSES WOULD HAVE BEEN PAID IF HEALTH INSURANCE OR DENTAL INSURANCE HAD BEEN PROVIDED, AND FOR THE COST OF HEALTH INSURANCE PREMIUMS, DENTAL INSURANCE PREMIUMS, OR CONTRIBUTIONS, IF ANY, PAID ON BEHALF OF THE CHILD.

### 12.12.    Miscellaneous Health Care Provisions

Each parent will deliver the medications of the child to the other parent at the beginning of the other parent's parenting time, unless the medications have been divided by the pharmacist into two containers that provide appropriate dosages and administrations to cover the time with each parent or unless two prescriptions can be obtained.

Each parent shall notify the other parent of the child's medical appointments within 24 hours of scheduling an appointment, and both parents may attend such medical appointments.

## 13. REQUIRED INFORMATION

The information required for each party by section 105.006(a) of the Texas Family Code is as follows:

| | |
|---|---|
| Name: | **Anna Marie Stroh** |
| Social Security number: | xxx-xx-x323 |
| Driver's license number: | TX 23559304 |
| Current residence address: | 5533 Beacon Hill Drive, Frisco  TX 75036 |
| Mailing address: | 5533 Beacon Hill Drive, Frisco  TX 75036 |
| Home telephone number: | 2143947570 |
| Name of employer: | n/a |
| Address of employment: | n/a |
| Work telephone number: | n/a |

| | |
|---|---|
| Name: | **John Stroh** |
| Social Security number: | xxx-xx-x956 |
| Driver's license number: | TX 10064845 |
| Current residence address: | 2609 Royal Circle, Plano, TX 75075 |
| Mailing address: | 2609 Royal Circle, Plano, TX 75075 |
| Home telephone number: | 2148708647 |
| Name of employer: | Salesforce |
| Address of employment: | 415 Mission St, San Francisco, CA 94105 |
| Work telephone number: | 2148708647 |

## 14. REQUIRED NOTICES

EACH PERSON WHO IS A PARTY TO THIS ORDER IS ORDERED TO NOTIFY EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY OF ANY CHANGE IN THE PARTY'S CURRENT RESIDENCE ADDRESS, MAILING ADDRESS, HOME TELEPHONE NUMBER, NAME OF EMPLOYER, ADDRESS OF EMPLOYMENT, DRIVER'S LICENSE NUMBER, AND WORK TELEPHONE NUMBER. THE PARTY IS ORDERED TO GIVE NOTICE OF AN INTENDED CHANGE IN ANY OF THE REQUIRED INFORMATION TO EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY ON OR BEFORE THE 60TH DAY BEFORE THE INTENDED CHANGE. IF THE PARTY DOES NOT KNOW OR COULD NOT HAVE KNOWN OF THE CHANGE IN SUFFICIENT TIME TO PROVIDE 60-DAY NOTICE, THE PARTY IS ORDERED TO GIVE NOTICE OF THE CHANGE ON OR BEFORE THE FIFTH DAY AFTER THE DATE THAT THE PARTY KNOWS OF THE CHANGE.

THE DUTY TO FURNISH THIS INFORMATION TO EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY CONTINUES AS LONG AS ANY PERSON, BY VIRTUE OF THIS ORDER, IS UNDER AN OBLIGATION TO PAY CHILD SUPPORT OR ENTITLED TO POSSESSION OF OR ACCESS TO A CHILD.

FAILURE BY A PARTY TO OBEY THE ORDER OF THIS COURT TO PROVIDE EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY WITH THE

CHANGE IN THE REQUIRED INFORMATION MAY RESULT IN FURTHER LITIGATION TO ENFORCE THE ORDER, INCLUDING CONTEMPT OF COURT. A FINDING OF CONTEMPT MAY BE PUNISHED BY CONFINEMENT IN JAIL FOR UP TO SIX MONTHS, A FINE OF UP TO $500 FOR EACH VIOLATION, AND A MONEY JUDGMENT FOR PAYMENT OF ATTORNEY'S FEES AND COURT COSTS.

Notice shall be given to the other party by delivering a copy of the notice to the party by registered or certified mail, return receipt requested. Notice shall be given to the Court by delivering a copy of the notice either in person to the clerk of this Court or by registered or certified mail addressed to the clerk at 2507 Lee St, Greenville, TX 75401. Notice shall be given to the state case registry by mailing a copy of the notice to State Case Registry, Contract Services Section, MC046S, P.O. Box 12017, Austin, Texas 78711-2017.

NOTICE TO ANY PEACE OFFICER OF THE STATE OF TEXAS: YOU MAY USE REASONABLE EFFORTS TO ENFORCE THE TERMS OF CHILD CUSTODY SPECIFIED IN THIS ORDER. A PEACE OFFICER WHO RELIES ON THE TERMS OF A COURT ORDER AND THE OFFICER'S AGENCY ARE ENTITLED TO THE APPLICABLE IMMUNITY AGAINST ANY CLAIM, CIVIL OR OTHERWISE, REGARDING THE OFFICER'S GOOD FAITH ACTS PERFORMED IN THE SCOPE OF THE OFFICER'S DUTIES IN ENFORCING THE TERMS OF THE ORDER THAT RELATE TO CHILD CUSTODY. ANY PERSON WHO KNOWINGLY PRESENTS FOR ENFORCEMENT AN ORDER THAT IS INVALID OR NO LONGER IN EFFECT COMMITS AN OFFENSE THAT MAY BE PUNISHABLE BY CONFINEMENT IN JAIL FOR AS LONG AS TWO YEARS AND A FINE OF AS MUCH AS $10,000.

THE COURT MAY MODIFY THIS ORDER THAT PROVIDES FOR THE SUPPORT OF A CHILD, IF:

1. THE CIRCUMSTANCES OF THE CHILD OR A PERSON AFFECTED BY THE ORDER HAVE MATERIALLY AND SUBSTANTIALLY CHANGED; OR

2. IT HAS BEEN THREE YEARS SINCE THE ORDER WAS RENDERED OR LAST MODIFIED AND THE MONTHLY AMOUNT OF THE CHILD SUPPORT AWARD UNDER THE ORDER DIFFERS BY EITHER 20 PERCENT OR $100 FROM THE AMOUNT THAT WOULD BE AWARDED IN ACCORDANCE WITH THE CHILD SUPPORT GUIDELINES.

## 15. WARNINGS TO PARTIES

FAILURE TO OBEY A COURT ORDER FOR CHILD SUPPORT OR FOR POSSESSION OF OR ACCESS TO A CHILD MAY RESULT IN FURTHER LITIGATION TO ENFORCE THE ORDER, INCLUDING CONTEMPT OF COURT. A FINDING OF CONTEMPT MAY BE PUNISHED BY CONFINEMENT IN JAIL FOR UP TO SIX MONTHS, A FINE OF UP TO $500 FOR EACH VIOLATION, AND A MONEY JUDGMENT FOR PAYMENT OF ATTORNEY'S FEES AND COURT COSTS.

FAILURE OF A PARTY TO MAKE A CHILD SUPPORT PAYMENT TO THE PLACE AND IN THE MANNER REQUIRED BY A COURT ORDER MAY RESULT IN THE PARTY'S NOT RECEIVING CREDIT FOR MAKING THE PAYMENT.

FAILURE OF A PARTY TO PAY CHILD SUPPORT DOES NOT JUSTIFY DENYING THAT PARTY COURT-ORDERED POSSESSION OF OR ACCESS TO A CHILD. REFUSAL BY A PARTY TO ALLOW POSSESSION OF OR ACCESS TO A CHILD DOES NOT JUSTIFY FAILURE TO PAY COURT-ORDERED CHILD SUPPORT TO THAT PARTY.

### 16. No Termination of Orders on Death of Obligee

An obligation to any amount to be paid by Respondent under this decree does not terminate on the death of the Respondent, John Stroh but continues as an obligation to Petitioner or K.M.S.

### 17. DIVISION OF MARITAL ESTATE

The Court finds that the following is a just and right division of the parties' marital estate, having due regard for the rights of each party and the children of the marriage.

### 17.1. Property Awarded to Respondent

IT IS ORDERED AND DECREED that Respondent, John Stroh, is awarded the following as Petitioner's sole and separate property, and Petitioner, Anna Marie Stroh, is divested of all right, title, interest, and claim in and to that property:

1. All clothing, jewelry, and other personal effects in the possession of Respondent or subject to Respondent's sole control.

2. All household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment in the possession of Respondent or subject to Respondent's sole control as well as all personal property items listed in Exhibit A of this Decree.

3. All sums of cash in the possession of Respondent or subject to Respondent's sole control, including funds on deposit, together with accrued but unpaid interest, in banks, savings institutions, or other financial institutions, which accounts stand in Respondent's sole name or from which Respondent has the sole right to withdraw funds or which are subject to Respondent's sole control.

4. All brokerage accounts, stocks, bonds, mutual funds, and securities registered in Petitioner's name, together with all dividends, splits, and other rights and privileges in connection with them.

5. The 2018 Jeep Wrangler motor vehicle Vin # C4HJXEG6JW240070, together with any keys, prepaid insurance, and title documents.

6. All policies of life insurance (including cash values) insuring Petitioner's life.

25

7. 50% of the following joint bank accounts:

    a. Wells Fargo Prime Checking account ending in 2588;

    b. Wells Fargo Complete Advantage checking account ending in 7869;

    c. Wells Fargo Complete Advantage checking account ending in 0871;

    d. Wells Fargo Teen Checking account ending in 8743.

The parties are ORDERED to divide and close the above listed accounts within 7 days of the entry of this decree.

8. 50% of the Fidelity Salesforce 401(k) plan in Respondent's name as of the date of divorce such division more particularly described in the Qualified Domestic Relations Order to be entered by the Court within thirty days of the entry of this decree.

9. 100% of the vested and unvested Salesforce (CRM) stock options in Respondent's name.

10. The Cowboy Club at the Star membership.

11. 100% of any frequent flier benefits in Respondent's name.

12. 100% of the following real property, subject to the conditions of 16.5. below, including but not limited to any escrow funds, prepaid insurance, utility deposits, keys, house plans, home security access and code, garage door opener, warranties and service contracts, and title and closing documents:

STONE CREEK VILLAGE PH 1 BLK 33 LOT 12, Denton County Texas.

Such property is also more commonly known as 5533 Beacon Hill Drive, Frisco TX 75036. It is AGREED by the parties that Anna Marie Stroh shall have the exclusive right to continue to occupy the residence located at 5533 Beacon Hill Drive, Frisco TX 75036 until August 31, 2022. It is AGREED that John Stroh shall be responsible for all utilities, taxes, mortgage payments, and maintenance costs to keep the property in it's present condition up to $8,000 per month. If the monthly total for all utilities, taxes, mortgage payments, and maintenance costs to keep the property in its present condition is less than $8,000, the Respondent shall pay the difference to the Petitioner on or before the fifth day of the following month, via Zelle.

**17.2. <u>Property Awarded to Petitioner</u>**

**IT IS ORDERED AND DECREED** that Petitioner, Anna Marie Stroh, is awarded the following as Respondent's sole and separate property, and Respondent, John Stroh, is divested of all right, title, interest, and claim in and to that property:

.

1. All clothing, jewelry, and other personal effects in the possession of Petitioner or subject to Petitioner's sole control, except for any item awarded to Respondent in Exhibit A.

2. All household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment in the possession of Petitioner or subject to Petitioner's sole control as well as any personal property item listed in Exhibit B, except for any item awarded to respondent in Exhibit A.

3. All sums of cash in the possession of Petitioner or subject to Petitioner's sole control, including funds on deposit, together with accrued but unpaid interest, in banks, savings institutions, or other financial institutions, which accounts stand in Petitioner's sole name or from which Petitioner has the sole right to withdraw funds or which are subject to Petitioner's sole control.

4. All brokerage accounts, stocks, bonds, mutual funds, and securities registered in Petitioner's name, together with all dividends, splits, and other rights and privileges in connection with them.

5. 50% of the following joint bank accounts:

    a.  Wells Fargo Prime Checking account ending in 2588;

    b.  Wells Fargo Complete Advantage checking account ending in 7869;

    c.  Wells Fargo Complete Advantage checking account ending in 0871;

    d.  Wells Fargo Teen Checking account ending in 8743.

6. All policies of life insurance (including cash values) insuring Petitioner's life.

7. 50% of the Fidelity Salesforce 401(k) plan in Respondent's name as of the date of divorce such division more particularly described in the Qualified Domestic Relations Order to be entered by the Court.

8. As an equalization payment of the division of the community estate, the sum of $110,000.00 payable by Respondent to Petitioner due in equal monthly payments of $2,000.00 per month beginning on January 1, 2022 and due on the first of each month there for the following 54 months, via Zelle.

9. 100% of any frequent flier benefits in Petitioner's name.

### 17.3. Obligations to Respondent

**IT IS ORDERED AND DECREED** that Respondent, John Stroh, shall pay, as a part of the division of the estate of the parties, and shall indemnify and hold Petitioner, Anna Marie Stroh, and Petitioner's property harmless from any failure to so discharge, these liabilities:

1. All credit cards, debts, and other obligations which were incurred solely by Respondent or held in Respondent's sole name.

2. All encumbrances, ad valorem taxes, liens, assessments, premiums, or other charges due or to become due on the real and personal property awarded to Respondent in this decree unless express provision is made in this decree to the contrary.

3. The sum of $110,000.00 payable to Anna Marie Stroh as referenced and described in 16.2.8 above.

4. 100% of the following debts:

    a. The Wells Fargo Visa credit card account ending in 2993;

    b. The Wells Fargo Line of Credit account number ending in 0354;

    c. The Wells Fargo Line of Credit account number ending in 0974;

    d. The Wells Fargo Line of Credit account number ending in 08647;

    e. The Barclays credit card account number ending in 6242 (to be paid off on or before May 1, 2022). Petitioner is Ordered and herby enjoined from incurring any additional expenses on this account and be solely responsible for any expenses incurred after December 15, 2021.

    f. The Barclays credit card account number ending in 0386.

    g. The Chase Visa account ending in 4604;

    h. Chase Visa account ending in 2265;

    i. The Hilton American Express account ending in 7647.

## 17.4. Obligations to Petitioner

**IT IS ORDERED AND DECREED** that Petitioner, Anna Marie Stroh, shall pay, as a part of the division of the estate of the parties, and shall indemnify and hold Respondent, John Stroh, and Respondent's property harmless from any failure to so discharge, these liabilities:

1. All credit cards, debts, and other obligations which were incurred solely by Petitioner or held in Petitioner's sole name unless expressly awarded to Respondent in this Decree.

2. All encumbrances, ad valorem taxes, liens, assessments, premiums, or other charges due or to become due on the real and personal property awarded to Petitioner in this decree unless express provision is made in this decree to the contrary.

## 17.5. Sale of Residence Located at 5533 Beacon Hill Drive, Frisco TX 75036

IT IS FURTHER ORDERED AND DECREED that if Anna Marie Stroh makes a written demand to John Stroh sell the property located at 5533 Beacon Hill Drive, Frisco TX 75036 prior to August 31, 2022, then property and all improvements, located at 5533 Beacon Hill Drive, Frisco TX 75036, shall be sold under the following terms and conditions:

1. The house shall be listed for sale with a duly licensed real estate agent that is mutual agreeable to the parties within 30 days of the demand for sale being received.

2. The house is to be listed for sale at a price mutually agreeable to the parties.

3. Respondent shall be responsible, for the mortgage, utilities, taxes, repairs, lawn service, and other necessary expenses to maintain the property in its current condition.

4. The house to be sold at a price mutually agreeable to the parties.

5. Neither party shall cause any lien or encumbrances to be placed upon said property, save and except upon the written agreement of both parties.

6. The net sales proceeds (defined as the gross sales price less cost of sale and full payment of any mortgage indebtedness or liens on the property) shall be distributed in numerical order directly provided as follows:

   A.   IT IS ORDERED that John Stroh shall receive the first $275,000.00 of sale proceeds; and

   B.   IT IS ORDERED that Anna Marie Stroh shall receive 100% of all remaining sale proceeds after the award of John Stroh's share of the sale proceeds.

It is expressly acknowledged and agreed that if Anna Marie Stroh should fail to make a written demand to sell the property prior to August 31, 2022, John Stroh shall be under no obligation to sell the property and Anna Marie Stroh shall have no rights to any sale proceeds resulting from the sale of the property.

## 17.6. Division of Non-awarded Assets and Non-assumed Liabilities

**IT IS ORDERED AND DECREED** that any assets of the parties not awarded or divided by this Agreed Final Decree of Divorce are subject to future division as provided in the Texas Family Code.

**IT IS FURTHER ORDERED AND DECREED,** as a part of the division of the estate of the parties, that any liability not expressly assumed by a party under this decree is to be paid by the party incurring the liability, and the party incurring the liability shall indemnify and hold the other party and the other party's property harmless from any failure to so discharge the liability.

## 17.7. Notices Concerning Property and Debts

**IT IS ORDERED AND DECREED** that each party shall send to the other party, within three days of its receipt, a copy of any correspondence from a creditor or taxing authority concerning any potential liability of the other party.

## 17.8. Attorney's Fees, Expenses, and Costs

To effect an equitable division of the estate of the parties and as a part of the division, and for services rendered in connection with conservatorship and support of the childr, each party shall be responsible for his or her own attorney's fees, expenses, and costs incurred as a result of legal representation in this case except that John Stroh is ORDERED to pay attorney's fees to Rebecca L. Armstrong, Armstrong Divorce and Family Law, PLLC, 5850 Granite Parkway, Suite 940, Plano, Texas 75024, by wire, cashier's check, money order, or electronic funds transfer, in the amount of twelve thousand dollars ($12,000.00) on or before 5:00 p.m. on the 14th day following the entry of this Agreed Final Decree of Divorce for Anna Marie Stroh's attorney's fees.

**IT IS ORDERED AND DECREED** that costs of court are to be borne by the party who incurred them.

## 18. TRANSFER AND DELIVERY OF PROPERTY

**IT IS FURTHER ORDERED** that each party will, within ten days of receiving written notice from the other party, execute and deliver to the other party any deeds, bills of sale, consents to change of beneficiaries of insurance policies, tax returns, and other documents as may be necessary to effectuate the provisions of this Final Decree of Divorce.

IT IS ORDERD that any party in possession of property awarded to or confirmed as the separate property of the other party shall deliver the property to the other within 14 days of the entry of this decree.

## 19. Confirmation of Separate Property

IT IS ORDERED AND DECREED that the following described property is confirmed as

the separate property of John Stroh:

R-S-1. All personal property listed in the attached Exhibit C to this Decree.

IT IS ORDERED AND DECREED that the following described property is confirmed as

the separate property of Anna Marie Stroh:

P-S-1. All personal property listed in the Attached Exhibit D to this Decree.

30

**20. MUNIMENT OF TITLE**

IT IS ORDERED that this decree shall serve as a muniment of title to transfer ownership of all property awarded to any party in this Agreed Final Decree of Divorce.

**21. INCOME TAXES FOR YEAR OF DIVORCE**

**21.1. Partition**

IT IS ORDERED AND DECREED that, for the calendar year 2021, the parties shall file a federal joint income tax return and report thereon the reporting party's share of the income, gains, losses, deductions, and credits, including estimated taxes and withholding taxes, of the parties during the calendar year 2021.

IT IS ORDERED that for calendar year 2021, JOHN STROH shall indemnify and hold ANNA MARIE STROH and ANNA MARIE STROH's property harmless for any tax liability therefrom unless such additional tax, penalty, or interest resulted from ANNA MARIE STROH's omission of income or claim of erroneous deduction, in which case ANNA MARIE STROH shall pay, and hold JOHN STROH and JOHN STROH's property harmless from, the additional tax, penalty, and interest allocable to the omitted income or erroneous deduction. It is ORDERED that JOHN STROH shall be awarded 100% of any tax return resulting from the parties' joint tax filing for the tax year 2021 as his sole and separate property.

**21.2. Furnishing of Information**

**IT IS ORDERED AND DECREED** that each party shall furnish such information to the other party as is requested to prepare federal income tax returns for 2021 within thirty days of receipt of a written request for the information, and in no event shall the available information be exchanged later than March 1, 2022. As requested information becomes available after that date, it shall be provided within ten days of receipt.

**21.3. Preservation of Records**

**IT IS ORDERED AND DECREED** that each party shall preserve for a period of seven years from the date of divorce all financial records relating to the community estate. Each party is **ORDERED** to allow the other party access to these records to determine acquisition dates or tax basis or to respond to an IRS examination within five days of receipt of written notice from the other party. Access shall include the right to copy the records.

**21.4. Payment of Taxes Not Income**

**IT IS ORDERED AND DECREED** that all payments made to the other party in accordance with the allocation provisions for payment of federal income taxes contained in this Agreed Final Decree of Divorce are not deemed income to the party receiving those payments but are part of the property division and necessary for a just and right division of the parties' estate.

31

### 21.5. No Alimony

**IT IS ORDERED AND DECREED** that no provision of this decree shall be construed as alimony under the Internal Revenue Code, except as this decree expressly provides for payment of maintenance or alimony under the Internal Revenue Code.

### 21.6. Tax Warning

The parties acknowledge that they have been separately advised by their respective attorneys that there may be certain tax consequences pertaining to this agreement, that neither attorney has furnished tax advice with respect to this agreement, that each party has been directed and advised to obtain independent tax advice from qualified tax accountants or tax counsel prior to signing this decree, and that the Internal Revenue Code may prevail over terms contained herein. The parties additionally acknowledge that they understand that failure to properly seek competent tax advice prior to the signing and entry of this divorce decree may subject one or both parties to unintended and dire tax consequences.

To the extent any suggested revisions to the tax provisions set-forth in this document were provided by a third party of her choosing, those changes have been incorporated into this document and were further reviewed before entry of this Order by the Court by a duly-qualified or licensed CPA, tax advisor, or tax attorney of lchoosing. Accordingly, lsignature on this document further evidences her agreement to fully indemnify and hold harmless her counsel of record or any agent of his counsel of record for any erroneous tax information or advice in this Agreed Final Decree of Divorce.

As evidenced by his signature on this Agreed Final Decree of Divorce, lacknowledges that his counsel of record has informed him that she is not licensed or qualified to give legal tax advice or tax advice in general, and that independent review of any and all tax-related provisions in this document have been conducted by a qualified third party of husband's choosing. lfurther agrees, as evidenced by his signature on this document that, to the extent any suggested revisions to the tax provisions set-forth in this document were provided by a third party of Husband's choosing to his counsel of record, those changes have been incorporated into this document and were further reviewed before entry of this Order by the Court by a duly-qualified or licensed CPA, tax advisor, or tax attorney of lchoosing. Accordingly, lsignature on this document further evidences his agreement to fully indemnify and hold harmless his counsel of record or any agent of his counsel of record for any erroneous tax information or advice in this Agreed Final Decree of Divorce.

## 22. Extracurricular Activities of the Child

IT IS ORDERED that AnnaMarie Stroh and John Stroh shall each be responsible for and pay fifty percent (50%) of the costs and fees for the all extracurricular activities of the child that are mutually agreed to by the parties for the child to participate in.

## 23. Parenting Facilitator

IT IS ORDERED that Dr. Linda Rollins-Threats is appointed as parenting facilitator. The Court finds that there is good cause shown and it is in the best interest of the children the subject

of this suit that a parenting facilitator be appointed. The Court further finds that Dr. Linda Rollins-Threats meets the requirements of section 153.6101 of the Texas Family Code, as documented by Dr. Linda Rollins-Threats.

All parties are ordered to deliver a copy of this order to Dr. Linda Rollins-Threats, ph: 972-492-5640, 3620 north Josey Lane, Suite 207, Carrollton, Texas 75007 within ten business days of the entry of this decree.

The parenting facilitator's duties are to assist the parties in minimizing child-related conflicts between the parents and resolving issues related to parenting or other family issues. The duties of the parenting facilitator are limited to matters that will aid the parties in the following: identifying disputed issues; reducing misunderstandings; clarifying priorities; exploring possibilities for problem solving; developing methods of collaboration in parenting; understanding parenting plans and reaching agreements about parenting issues to be included in a parenting plan; complying with the Court's order regarding conservatorship or possession of and access to the children; implementing parenting plans; obtaining training regarding problem solving, conflict management, and parenting skills; settling disputes regarding parenting issues and reaching a proposed joint resolution or statement of intent regarding those disputes; and monitoring compliance with the Court's orders. In performing these duties, the parenting facilitator shall comply with the standard of care that applies to the parenting facilitator's professional license.

The appointment of a parenting facilitator does not divest the Court of its exclusive jurisdiction to determine issues of conservatorship, support, and possession of and access to the children or the authority to exercise management and control of the suit. Accordingly, the parenting facilitator may not modify any order, judgment, or decree.

IT IS ORDERED that the parenting facilitator shall submit a written report to the Court and to the parties and their attorneys as requested by the parties or the Court, or as needed in the professional judgment and discretion of the parenting facilitator. IT IS FURTHER ORDERED that the report may include any information required by the Court but may not include recommendations regarding conservatorship of or possession or access to the children.

Notwithstanding any rule, standard of care, or privilege that applies to the parenting facilitator's professional license, a communication made by a participant in parenting facilitation is subject to disclosure and may be offered in any judicial or administrative proceeding, if otherwise admissible under the rules of evidence. IT IS ORDERED that the parenting facilitator may be required to testify in any proceeding relating to or arising from the parenting facilitator's duties, including as to the basis for any recommendation made to the parties that arises from those duties.

IT IS ORDERED that the parenting facilitator shall keep a detailed record regarding meetings and contacts with the parties, attorneys, or other persons involved in the suit and shall keep the records until the seventh anniversary of the date the facilitator's services are terminated, unless a rule adopted by the licensing authority that issues the facilitator's professional license establishes a different retention period. IT IS FURTHER ORDERED that no record created as part

33

of the parenting facilitation that arises from the parenting facilitator's duties is confidential. IT IS FURTHER ORDERED that, on request, the parenting facilitator shall make the records available to an attorney for a party, an attorney for the children, and a party who does not have an attorney.

IT IS ORDERED that, if the parenting facilitator has a conflict of interest with, or previous knowledge of, a party or a child the subject of this suit, the parenting facilitator shall, before accepting this appointment, disclose the conflict or previous knowledge to the Court, each attorney for a party, any attorney for the children, and any party who does not have an attorney and shall decline this appointment unless, after the disclosure, the parties and the child's attorney, if any, agree in writing to the parenting facilitator's appointment as parenting facilitator.

IT IS ORDERED that, before accepting this appointment, the parenting facilitator shall disclose to the Court, each attorney for a party, any attorney for the children, and any party who does not have an attorney the following: a pecuniary relationship with an attorney, party, or child in this suit; a relationship of confidence or trust with an attorney, party, or child in this suit; and other information regarding a relationship with an attorney, party, or child in this suit that might reasonably affect the parenting facilitator's ability to act impartially during service as parenting facilitator. IT IS ORDERED that if the parenting facilitator makes such a disclosure, the parenting facilitator shall decline this appointment unless, after the disclosure, the parties and the child's attorney, if any, agree in writing to the parenting facilitator's service as parenting facilitator.

IT IS ORDERED that if the parenting facilitator discovers that the parenting facilitator has a conflict of interest with, or previous knowledge of, a party or a child the subject of the suit, the parenting facilitator shall immediately disclose the conflict or previous knowledge to the Court, each attorney for a party, any attorney for the children, and any party who does not have an attorney and shall withdraw unless, after the disclosure, the parties and the child's attorney, if any, agree in writing to the parenting facilitator's continuation as parenting facilitator.

IT IS ORDERED that the parenting facilitator shall promptly and simultaneously disclose to each party's attorney, any attorney for the children, and any party who does not have an attorney the existence and substance of any communication between the parenting facilitator and another person, including a party, a party's attorney, a child who is the subject of the suit, and any attorney for the children, if the communication occurred outside a parenting facilitation session and involved the substance of parenting facilitation.

Referral to parenting facilitation is not a substitute for trial, and the case may be tried if not settled or agreed to continue in parenting facilitation or other intervention service. The Court shall remove the parenting facilitator on the request and agreement of all parties, on the request of the parenting facilitator, on the motion of a party if good cause is shown, or if the parenting facilitator ceases to satisfy the minimum qualifications required by section 153.6101 of the Texas Family Code.

IT IS ORDERED that the parties shall each pay 50% of the cost of Dr. Linda Rollins-Threats, unless the parenting facilitator assigns 100% of the cost of a session to one parent or the other.

## 24. DISCHARGE FROM DISCOVERY RETENTION REQUIREMENT

**IT IS ORDERED AND DECREED** that the parties and their respective attorneys are discharged from the requirement of keeping and storing the documents produced in this case in accordance with rule 191.4(d) of the Texas Rules of Civil Procedure.

## 25. DECREE ACKNOWLEDGEMENT

Respondent, John Stroh, and Petitioner, Anna Marie Stroh, each acknowledge that before signing this Final Decree of Divorce they have read this Final Decree of Divorce fully and completely, have had the opportunity to ask any questions regarding the same, and fully understand that the contents of this Final Decree of Divorce constitute a full and complete resolution of this case. Petitioner and Respondent acknowledge that they have voluntarily affixed their signatures to this Final Decree of Divorce, believing this agreement to be a just and right division of the marital debt and assets, and state that they have not signed by virtue of any coercion, any duress, or any agreement other than those specifically set forth in this Final Decree of Divorce.

## 26. ADDITIONAL AND STIPULATIONS

Evidenced by their signatures below, Respondent, John Stroh, and Petitioner, Anna Marie Stroh, hereby acknowledge that they have the right to have accountants, business and property evaluation specialists, appraisers, and other qualified people to further determine the nature and extent of their property and the property rights and values associated therewith and ,that they have a right to conduct full discovery, which would include but is not limited to, the taking of depositions, requests for production of documents, request for each spouse to admit certain relevant facts, and subpoenaing documents. The parties further understand that conducting of said discovery could reveal addition assets and debts, which they may be entitled to have the court divide. In a normal divorce proceeding, these are all common matters that are often and normally conducted to ensure protection of a litigant's rights. Knowing the same, the parties do not wish to have the attorneys conduct said discovery, and the parties accept all outcomes, consequences, or liabilities resulting from discovery not being conducted in this matter.

Evidenced by their signatures below, Petitioner and Respondent, hereby waive these foregoing rights to the extent that have not taken full advantage of them.

Evidenced by their signatures below, Petitioner and Respondent further acknowledge that any descriptions, including, but not limited to accounts, amounts, property descriptions, debt descriptions, or VIN numbers that are vague, imprecise, incomplete, inaccurate, or absent are in such form because Petitioner and Respondent have chosen for them to be, after having had opportunity to add to or correct same.

Evidenced by their signatures below, Petitioner and Respondent further acknowledge that there may be certain tax consequences pertaining to this agreement, that each party has been afforded the opportunity to obtain independent tax advice from qualified tax accountants or tax counsel prior to signing this agreement, and that the Internal Revenue Code may prevail over terms contained herein.

Evidenced by their signatures below, Petitioner and Respondent each stipulate and acknowledge that they are not in any form of bankruptcy at this time and have not been at any time since this divorce action was filed.

## 27. INDEMNIFICATION

Each party represents and warrants that he or she has not incurred any outstanding debt, obligation, or other liability on which the other party is or may be liable, other than those described in this decree. Each party agrees and **IT IS ORDERED** that if any claim, action, or proceeding is hereafter initiated seeking to hold the party not assuming a debt, an obligation, a liability, an act, or an omission of the other party liable for such debt, obligation, liability, act, or omission of the other party, that other party will, at that other party's sole expense, defend the party not assuming the debt, obligation, liability, act, or omission of the other party against any such claim or demand, whether or not well founded, and will indemnify the party not assuming the debt, obligation, liability, act, or omission of the other party and hold him or her harmless from all damages resulting from the claim or demand.

Damages, as used in this provision, includes any reasonable loss, cost, expense, penalty, and other damage, including without limitation attorney's fees and other costs and expenses reasonably and necessarily incurred in enforcing this indemnity.

**IT IS ORDERED** that the indemnifying party will reimburse the indemnified party, on demand, for any payment made by the indemnified party at any time after the entry of the divorce decree to satisfy any judgment of any court of competent jurisdiction or in accordance with a bona fide compromise or settlement of claims, demands, or actions for any damages to which this indemnity relates.

The parties agree and **IT IS ORDERED** that each party will give the other party prompt written notice of any litigation threatened or instituted against either party that might constitute the basis of a claim for indemnity under this decree.

## 28. CLARIFYING ORDERS

Without affecting the finality of this Agreed Final Decree of Divorce, this Court expressly reserves the right to make orders necessary to clarify and enforce this decree.

## 29. RELIEF NOT GRANTED

**IT IS ORDERED AND DECREED** that all relief requested in this case and not expressly granted is denied. This is a final judgment, for which let execution and all writs and processes necessary to enforce this judgment issue. This judgment finally disposes of all claims and all parties and is appealable.

**30. D**ATE OF **J**UDGMENT

SIGNED on ___Dec. 20, 2021___.

___7 /f/ Haulting___
JUDGE PRESIDING

**APPROVED AS TO FORM ONLY:**

CORDELL & CORDELL, P.C.
Galleria North Tower II
13727 Noel Rd., Ste. 1050
Dallas, Texas 75240
Phone: 972.764.3754
Fax: 972.692.8936

By: _____
Benjamin Redleaf
SBN: 24077495
bredleaf@cordelllaw.com
Julianne O. Morgan
SBN: 24066167
Attorneys for Respondent

Armstrong Divorce & Family Law, PLLC
5850 Granite Parkway, Ste. 940
Plano, Texas 75024
Phone: 972.544.1664
Fax: 972.408.3455

By: _____
Rebecca L. Armstrong
SBN: 24062689
rebecca@armstronglawtexas.com
Melissa R. Cowle
SBN: 24101652

Attorneys for Petitioner

**AGREED AS TO FORM AND SUBSTANCE:**

_____
John Stroh – Respondent

_____
Anna Marie Stroh - Petitioner

# Exhibit A

| Section | Awarded to | Location | Description |
|---|---|---|---|
| Household Furniture, Furnishings and Fixtures | John | Game Room | Ping Pong Tabletop |
| Household Furniture, Furnishings and Fixtures | John | Game Room | Pool Table |
| Household Furniture, Furnishings and Fixtures | John | Garage | Tools, Thule and Misc |
| Household Furniture, Furnishings and Fixtures | John | Hannah Room | Headboard/Footboard/Dresser/Mirror |
| Household Furniture, Furnishings and Fixtures | John | Hannah Room | Nightstand |
| Household Furniture, Furnishings and Fixtures | John | Hannah Room | Table & Lamp |
| Household Furniture, Furnishings and Fixtures | John | Kitchen | Refrigerator |
| Household Furniture, Furnishings and Fixtures | John | Laundry Room | Washer |
| Household Furniture, Furnishings and Fixtures | John | Office | Desk & Book Case |
| Household Furniture, Furnishings and Fixtures | John | Patio | Log Fire Table & Bar Stools |
| Household Furniture, Furnishings and Fixtures | John | Patio | Pit Sectional + Pillows |
| Household Furniture, Furnishings and Fixtures | John | Patio | Rug |
| Household Furniture, Furnishings and Fixtures | John | Patio | Table |
| Household Furniture, Furnishings and Fixtures | John | Side Yard | Pit Sectional |
| Household Furniture, Furnishings and Fixtures | John | Game Room | Low Chairs & Table |
| Household Furniture, Furnishings and Fixtures | John | Game Room | Table & 4 chairs |
| Electronics and Computers | John | Back Yard | 55" TV |
| Electronics and Computers | John | Back Yard | 55" TV |
| Electronics and Computers | John | Back Yard | 55" TV |
| Electronics and Computers | John | Hannah Bedroom | TV & DVD Player |
| Electronics and Computers | John | Living Room | Electronics |
| Electronics and Computers | John | Master Bedroom | Outdoor Electronics |
| Electronics and Computers | John | Media Room | Electronics |

## Exhibit B

| Section | Awarded to | Location | Description |
|---|---|---|---|
| Household Furniture, Furnishings and Fixtures | AnnaMarie | Back Yard | Day Bed + Pillows |
| Household Furniture, Furnishings and Fixtures | AnnaMarie | Bar | Ice Machine |
| Household Furniture, Furnishings and Fixtures | AnnaMarie | Breakfast Nook | Dining Table + 6 Chairs |
| Household Furniture, Furnishings and Fixtures | AnnaMarie | Dining Room | Table, 8 Chairs |
| Household Furniture, Furnishings and Fixtures | AnnaMarie | Garage | Rug |
| Household Furniture, Furnishings and Fixtures | AnnaMarie | Garage | Thule |
| Household Furniture, Furnishings and Fixtures | AnnaMarie | Haley Bedroom | Bed, Furniture, etc |
| Household Furniture, Furnishings and Fixtures | AnnaMarie | Haley Bedroom | Writing Desk |
| Household Furniture, Furnishings and Fixtures | AnnaMarie | Kennedy Bedroom | Bed, Furniture, etc |
| Household Furniture, Furnishings and Fixtures | AnnaMarie | Kitchen | Glasses, Cups, Serving and Cutlery |
| Household Furniture, Furnishings and Fixtures | AnnaMarie | Kitchen | Pots, Pans, Equipment |
| Household Furniture, Furnishings and Fixtures | AnnaMarie | Kitchen | 4 Bar stools |
| Household Furniture, Furnishings and Fixtures | AnnaMarie | Living Room | Rectangle Table |
| Household Furniture, Furnishings and Fixtures | AnnaMarie | Living Room | Round End Table |
| Household Furniture, Furnishings and Fixtures | AnnaMarie | Living Room | Sectional Couch |
| Household Furniture, Furnishings and Fixtures | AnnaMarie | Living Room | Armoire |
| Household Furniture, Furnishings and Fixtures | AnnaMarie | Living Room | Lamp |
| Household Furniture, Furnishings and Fixtures | AnnaMarie | Living Room | Lamp |
| Household Furniture, Furnishings and Fixtures | AnnaMarie | Master Bedroom | Peloton |
| Household Furniture, Furnishings and Fixtures | AnnaMarie | Master Bedroom | Bed, Dresser, Armoire, Nightstands |
| Household Furniture, Furnishings and Fixtures | AnnaMarie | Office | Pink Chair |
| Household Furniture, Furnishings and Fixtures | AnnaMarie | Office | White Chair |
| Household Furniture, Furnishings and Fixtures | AnnaMarie | Office | Lamp |
| Household Furniture, Furnishings and Fixtures | AnnaMarie | Wine Room | Entry Table |
| Household Furniture, Furnishings and Fixtures | AnnaMarie | Wine Room | Marble Top Table |
| Household Furniture, Furnishings and Fixtures | AnnaMarie | Wine Room | Matching Chairs |
| Electronics and Computers | AnnaMarie | Haley Bedroom | TV & DVD Player |
| Electronics and Computers | AnnaMarie | K▆▆ Bedroom | TV & DVD Player |
| Electronics and Computers | AnnaMarie | Master Bedroom | TV & DVD Player |

# Exhibit B (con't)

| Section | Awarded to | Location | Description |
|---|---|---|---|
| Antiques, Artwork, and Collections | AnnaMarie | Entire House | Decorations, Pictures, etc |
| Antiques, Artwork, and Collections | AnnaMarie | Entire House | Holiday Items and Decorations |
| Antiques, Artwork, and Collections | AnnaMarie | Wine Room | Bottles of Wine |
| Antiques, Artwork, and Collections | AnnaMarie | Bar | Alcohol |
| Assets Held for the Benefit of Another | AnnaMarie | Haley Room | Clothes, shoes, etc |
| Assets Held for the Benefit of Another | AnnaMarie | Haley Room | Jewelry |
| Assets Held for the Benefit of Another | AnnaMarie | K██ Room | Clothes, shoes, etc |
| Assets Held for the Benefit of Another | AnnaMarie | K██ Room | Jewelry |
| Assets Held for the Benefit of Another | AnnaMarie | Jeff's House | Kids Shotgun |

# Exhibit C

| Section | Awarded to | Location | Description |
|---|---|---|---|
| Separate Assets of Husband | John | Office | Printer |
| Separate Assets of Husband | John | Office | 2 Monitors |
| Separate Assets of Husband | John | Entire House | All Hunting Gear (except Women's Clothing) |
| Separate Assets of Husband | John | Entire House | All Men's Hunting Clothing |
| Separate Assets of Husband | John | Unknown | AR15 and Scopes |
| Separate Assets of Husband | John | Breakfast Nook | Bar |
| Separate Assets of Husband | John | Master Bedroom | Clothes, shoes, etc |
| Separate Assets of Husband | John | Wine Room | Humidor & Cigars |
| Separate Assets of Husband | John | Master Bedroom | Jewelry |
| Separate Assets of Husband | John | Unknown | Mossberg 12 Gauge |
| Separate Assets of Husband | John | Garage | Pitboss Smoker |
| Separate Assets of Husband | John | Unknown | Remington 1171 12 Gauge |
| Separate Assets of Husband | John | Unknown | Remington 870 12 Gauge |
| Separate Assets of Husband | John | John's Father's House | Sig P365XL Black Handle 9MM |
| Separate Assets of Husband | John | John's Vehicle | Sig P365XL Gray Handle 9MM |
| Separate Assets of Husband | John | Game Room | Stroh's Sign |
| Separate Assets of Husband | John | Garage | Tools & Yard Equipment |
| Separate Assets of Husband | John | Wine Room | Vinotech Wine Cabinet |

# Exhibit D

| Section | Awarded to | Location | Description |
|---|---|---|---|
| Separate Assets of Wife | AnnaMarie | Unknown | Beretta 20 Gauge |
| Separate Assets of Wife | AnnaMarie | Anna Marie's Vehicle | Bersa Thunder 380 |
| Separate Assets of Wife | AnnaMarie | Master Bedroom | Clothes, shoes, etc |
| Separate Assets of Wife | AnnaMarie | Living Room | Coffee Table |
| Separate Assets of Wife | AnnaMarie | Laundry Room | Dryer |
| Separate Assets of Wife | AnnaMarie | Master Bedroom | Jewelry |
| Separate Assets of Wife | AnnaMarie | Unknown | Ladies AR15 and Scope |
| Separate Assets of Wife | AnnaMarie | Media Room | Pit Couch |
| Separate Assets of Wife | AnnaMarie | John's Father's House | Smith & Wesson EZ 9MM |

# Denton County
## Juli Luke
### County Clerk

---

**Instrument Number:** 92405

ERecordings-RP

MEMORANDUM

Recorded On: August 28, 2023 01:41 PM                    Number of Pages: 11

---

**" Examined and Charged as Follows: "**

Total Recording: $66.00

---

*********** **THIS PAGE IS PART OF THE INSTRUMENT** ***********
Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**                                        **Record and Return To:**

Document Number:      92405                                 Simplifile
Receipt Number:       20230828000458
Recorded Date/Time:   August 28, 2023 01:41 PM
User:                 Lisa H
Station:              Station 23

---



STATE OF TEXAS
COUNTY OF DENTON
I hereby certify that this Instrument was FILED In the File Number sequence on the date/time
printed hereon, and was duly RECORDED in the Official Records of Denton County, Texas.

Juli Luke
County Clerk
Denton County, TX

## MEMORANDUM AND NOTICE OF LEASE AGREEMENT

This notice is entered into and provided by AnnaMarie Stroh, Lessee, on the date stated below.

Lessor, John Stroh, agreed to lease certain real property to Lessee, Anna Marie Stroh, located in Denton County, Texas, with the following legal description:

Stone Creek Village PH 1, BLK 33, LOT 12, more commonly known as 5533 Beacon Hill Dr., Frisco, Texas 75036.

The lease dated the 20th day of August 2022, is for the period commencing on September 1, 2022, and ending on May 31, 2026. The lease agreement in full is attached hereto as Exhibit A.

_____
AnnaMarie Stroh

SIGNED under oath before me on _August 24, 2023_____.

_____
Notary Public, State of Texas

CH'CRYSTAL CARSON
Notary Public, State of Texas
Comm. Expires 05-15-2027
Notary ID 134359148

# RESIDENTIAL LEASE

This Agreement, dated August 20, 2022, by and between the property owner known as John T Stroh of 5533 Beacon Hill Drive, Frisco, Texas, 75036, hereinafter known as the "Landlord",

**AND**

An individual known as AnnaMarie Stroh, hereinafter known as the "Tenant", agree to the following:

**OCCUPANT(S)**: The Premises is to be occupied strictly as a residential dwelling with the following Two (2) Occupants to reside on the Premises in addition to the Tenant mentioned above: Kelsey Stroh and Haley Stroh, hereinafter known as the "Occupant(s)".

**OFFER TO RENT**: The Landlord hereby rents to the Tenant, subject to the following terms and conditions of this Agreement, a single-family home with the address of 5533 Beacon Hill Drive, Frisco, Texas, 75036 consisting of 5 bedrooms and 4.5 bathrooms hereinafter known as the "Premises". The Landlord may also use the address for notices sent to the Tenant.

**PURPOSE**: The Tenant and any Occupant(s) may only use the Premises as a residential dwelling. It may not be used for storage, manufacturing of any type of food or product, professional service(s), or for any commercial use unless otherwise stated in this Agreement.

**FURNISHINGS**: The Premises is furnished with the following:

> Items itemized on the Divorce Decree (CAUSE NO. 21-5527-442) listed as awarded to the Landlord in addition to Bedroom Set(s), Dining Room Set(s), Kitchen Set (Including Pots, Pans, Glasses, Mugs, Dishes, etc.), Living Room Set(s) and the entire house furnishings and garage contents and all other furnishings to be provided by the Tenant. Any damage to the Landlord's furnishings shall be the liability of the Tenant, except for reasonable wear-and-tear, to be billed directly to Tenant.

**APPLIANCES**: The Landlord shall provide the following appliances:

> Air Conditioner(s), Dishwasher, Dryer (for Laundry), Fan(s), Hot Water Heater, HVAC, Microwave, Outdoor Grill, Oven(s), Refrigerator, Stove(s), Television(s), Vacuum Cleaner, Washer and Dryer and all other appliances to be provided by the Tenant. Any damage to the Landlord's appliances shall be the liability of the Tenant, except for reasonable wear-and-tear, to be billed directly to Tenant.

**LEASE TERM**: This Agreement shall be a fixed-period arrangement beginning on September 1, 2022 and ending on May 31, 2026 with the Tenant being required to move-out at the end of the Lease Term if a new Lease Agreement is not authorized. Hereinafter known as the "Lease Term".

Tenant shall vacate the Premises upon termination of the Agreement, unless: (i) Landlord and Tenant have
extended this Agreement in writing or signed a new agreement; (ii) mandated by local rent control law; or

(iii) Landlord accepts Rent from Tenant (other than past due Rent), in which case a month-to-month tenancy
shall be created which either party may terminate by Tenant giving Landlord written notice of at least 30
days prior to the desired termination date, or by Landlord giving Tenant written notice as provided by law.
Rent shall be at a rate agreed to by Landlord and Tenant, or as allowed by law. All other terms and
conditions of this Agreement shall remain in full force and effect.

**RENT**: Tenant shall pay the Landlord in equal monthly installments of **$3,000.00** (US Dollars) hereinafter known as the "Rent". The Rent will be due on the First (1st) of every month and be paid via the following instructions:

*sent via Zelle to johntstroh65@gmail.com*

**NON-SUFFICIENT FUNDS (NSF CHECKS)**: If the Tenant attempts to pay the rent with a check that is not honored or an electronic transaction (ACH) due to insufficient funds (NSF) there shall be no fee (US Dollars).

**LATE FEE**: For each payment that is not paid within 5 days after its due date, Tenant shall pay a late fee of $25.00 per day, beginning with the day after the due date, unless alternative arrangements are made in writing.

**FIRST (1ST) MONTH'S RENT**: First (1st) month's rent shall be due by the Tenant upon the start of the Lease Term.

**PRE-PAYMENT**: The Landlord shall not require any pre-payment of rent by the Tenant.

**SECURITY DEPOSIT**: The Tenant shall not be obligated to pay a Security Deposit as part of this Agreement. However, any damage beyond reasonable wear-and-tear shall be the sole financial responsibility of the Tenant.

**POSSESSION**: Tenant has examined the condition of the Premises and by taking possession acknowledges that they have accepted the Premises in good order and in its current condition except as herein otherwise stated. Failure of the Landlord to deliver possession of the Premises at the start of the Lease Term to the Tenant shall terminate this Agreement at the option of the Tenant. Furthermore, under such failure to deliver possession by the Landlord, and if the Tenant cancels this Agreement, the Security Deposit (if any) shall be returned to the Tenant along with any other pre-paid rent, fees, including if the Tenant paid a fee during the application process before the execution of this Agreement.

**ACCESS**: Upon the start of the Lease Term, the Landlord agrees to give access to the Tenant in the form of keys, fobs, cards, or any type of keyless security entry as needed to enter the common areas and the Premises. Duplicate copies of the access provided may only be authorized under the consent of the Landlord and, if any replacements are needed, the Landlord may provide them for a fee. At the end of this Agreement all access provided to the Tenant shall be returned to the Landlord or a fee will be charged to the Tenant(s.

**SUBLETTING**: The Tenant shall not have the right to sub-let the Premises or any part thereof without the prior written consent of the Landlord. If consent is granted by the Landlord, the

Tenant will be responsible for all actions and liabilities of the Sublessee including but not limited to: damage to the Premises, non-payment of rent, and any eviction process (In the event of an eviction the Tenant shall be responsible for all court filing fee(s), representation, and any other fee(s) associated with removing the Sublessee). The consent by the Landlord to one sub-let shall not be deemed to be consent to any subsequent subletting.

**ABANDONMENT**: If the Tenant vacates or abandons the property for a time-period that is the minimum set by State law or seven (7) days, whichever is less, the Landlord shall have the right to terminate this Agreement immediately and remove all belongings including any personal property off of the Premises. If the Tenant vacates or abandons the property, the Landlord shall immediately have the right to terminate this Agreement.

**ASSIGNMENT**: Tenant shall not assign this Lease without the prior written consent of the Landlord. The consent by the Landlord to one assignment shall not be deemed to be consent to any subsequent assignment.

**RIGHT OF ENTRY**: The Landlord shall have the right to enter the Premises during normal working hours by providing notice in accordance with the minimum State requirement in order for inspection, make necessary repairs, alterations or improvements, to supply services as agreed or for any reasonable purpose. The Landlord may exhibit the Premises to prospective purchasers, mortgagees, or lessees upon reasonable notice.

**SALE OF PROPERTY**: During the Term of this Lease agreement, unless due to an extreme financial hardship (possible foreclosure, bankruptcy, etc.), Landlord agrees NOT to sell the property without the prior written agreement of the Tenant.

The following schedule of net proceeds shall be retained by the Landlord from the Sale of the property on or before July 1, 2024.

| Sale Date (on or after) | Net Proceeds to Landlord | Sale Date (on or after) | Net Proceeds to Landlord |
|---|---|---|---|
| 9/1/2022 | $266,000 | 8/1/2023 | $310,000 |
| 10/1/2022 | $270,000 | 9/1/2023 | $314,000 |
| 11/1/2022 | $274,000 | 10/1/2023 | $318,000 |
| 12/1/2022 | $278,000 | 11/1/2023 | $322,000 |
| 1/1/2023 | $282,000 | 12/1/2023 | $326,000 |
| 2/1/2023 | $286,000 | 1/1/2024 | $330,000 |
| 3/1/2023 | $290,000 | 2/1/2024 | $334,000 |
| 4/1/2023 | $294,000 | 3/1/2024 | $338,000 |
| 5/1/2023 | $298,000 | 4/1/2024 | $342,000 |
| 6/1/2023 | $302,000 | 5/1/2024 | $346,000 |
| 7/1/2023 | $306,000 | 6/1/2024 | $350,000 |

Any net proceeds from the Sale of the property on or before July 1, 2024 beyond those above (to be retained by the Landlord) shall be distributed to the Tenant.

If the Premises is sold after July 1, 2024, no net proceeds (from the Sale) are due to the Tenant. In addition, the Tenant is to be notified of the new Owner, and if there is a new Manager, their contact details for repairs and maintenance shall be forwarded. If the Premises is conveyed to another party, the new owner shall have the right to terminate this Agreement after providing at least 30 days' notice to the Tenant.

**RIGHTS TO TERMINATE LEASE**: Tenant may have special statutory rights to terminate the lease early in certain situations involving family violence or a military deployment or transfer in accordance with Section 92.016 of Texas Property Code.

**REPAIR REQUESTS**: All requests for repairs must be in writing and delivered to Landlord. If Tenant is delinquent in rent at the time a repair notice is given, Landlord is not obligated to make the repair. In the event of an emergency related to the condition of the Property that materially affects the physical health or safety of an ordinary Tenant, Tenant may call Landlord or, if applicable, the property manager. Ordinarily, a repair to the heating and air conditioning system is not an emergency.

If Landlord fails to repair a condition that materially affects the physical health or safety of an ordinary Tenant as required by this lease or the Property Code, Tenant may be entitled to exercise remedies under §92.056 and §92.0561 of the Property Code. If Tenant follow the procedures under those sections, the following remedies may be available to Tenant: (1) terminate the lease and obtain an appropriate refund under §92.056(f); (2) have the condition repaired or remedied according to §92.0561; (3) deduct from the rent the cost of the repair or remedy according to §92.0561; and (4) obtain judicial remedies according to §92.0563. Do not exercise these remedies without consulting an attorney or carefully reviewing the procedures under the applicable sections. The Property Code presumes that 7 days is a reasonable period of time for the Landlord to make a diligent effort to repair a condition unless there are circumstances which establish that a different period of time is appropriate (such as the severity and nature of the condition and the availability of materials, labor, and utilities). Failure to strictly follow the procedures in the applicable sections may cause Tenant to be in default of the lease.

**SERVICEMEMBERS CIVIL RELIEF ACT**: In the event the Tenant is or hereafter becomes, a member of the United States Armed Forces on extended active duty and hereafter the Tenant receives permanent change of station (PCS) orders to depart from the area where the Premises are located, or is relieved from active duty, retires or separates from the military, is ordered into military housing, or receives deployment orders, then in any of these events, the Tenant may terminate this lease upon giving thirty (30) days written notice to the Landlord. The Tenant shall also provide to the Landlord a copy of the official orders or a letter signed by the Tenant's commanding officer, reflecting the change which warrants termination under this clause. The Tenant will pay prorated rent for any days which he/she occupies the dwelling past the beginning of the rental period.

The damage/security deposit will be promptly returned to Tenant, provided there are no damages to the Premises.

**LEAD PAINT**: The Premises was not constructed before 1978 and therefore does not contain lead-based paint.

**GOVERNING LAW**: This Agreement is to be governed under the laws located in the State of Texas.

**ADDITIONAL TERMS AND CONDITIONS**: There are no further terms or conditions that will be added to this Agreement other than any attachments or addendums attached.

**TAXES:** Taxes attributable to the Premises or the use of the Premises shall be allocated as follows:

> REAL ESTATE TAXES. Landlord shall pay all real estate taxes and assessments for the Premises.

> PERSONAL PROPERTY TAXES. Landlord shall pay all personal property taxes and any other charges which may be levied against the Premises which are attributable to Tenant's use of the Premises, along with all sales and/or use taxes (if any) that may be due in connection with lease payments.

**PROPERTY INSURANCE:** Landlord and Tenant shall each be responsible to maintain appropriate insurance for their respective interests in the Premises and property located on the Premises.

**UTILITIES**: The Landlord agrees to pay for the following utilities and services up to a total of $4,000 per month until July 1, 2024:

> Electricity, Natural Gas, AT&T U-verse, Internet, Lawn Care, Homeowner's Insurance, Trash Removal, Water, Pool Service, Netflix, Spotify, Hulu, HOA Fees, Disney+, Home Security and Home Warranty. Any amounts beyond $4,000 per month for utilities and services shall be the responsibility of the Tenant. If Landlord pays more that the agreed upon $4,000 per month, Tenant will reimburse the Landlord for any amounts above the $4,000 by the 5th day of the following month.

Notwithstanding anything to the contrary, both parties will re-assess this section on June 1, 2024.

**MAINTENANCE, REPAIRS, OR ALTERATIONS**: The Tenant shall, at their own expense and at all times, maintain premises in a clean and sanitary manner, and shall surrender the same at termination hereof, in as good condition as received, normal wear and tear excepted. The Tenant may not make any alterations to the leased premises without the consent in writing of the Landlord. The Landlord shall be responsible for repairs to the interior and exterior of the building. If the Premises includes a washer, dryer, freezer, dehumidifier unit and/or air conditioning unit, the Landlord makes no warranty as to the repair or replacement of units if one or all shall fail to operate. It is the responsibility of the Tenant to replace batteries in all battery-operated smoke detectors when needed. A monthly "cursory" inspection may be required for all fire extinguishers to make sure they are fully charged.

**SMOKE DETECTORS:** The Landlord is responsible for ensuring the Premises is equipped with smoke detectors in their proper location as required by Tex. Property Code, Chapter 92, Subchapter F. Any requests for additional smoke detectors must be in writing. Tenant may be subject to civil liability for damages and attorney fees under Tex. Property Code § 92.2611 due to damage to the Premises or Property should the Tenant disconnect, intentionally damage the property, or remove the battery without immediately replacing it with a working battery.

**PETS**: The Tenant shall be allowed to have:

> an unlimited amount of pets on the Premises consisting of Cats, Dogs, Fish, Hamsters, with no other types of Pet(s) being allowed on the Premises or common areas, hereinafter known as the "Pet(s)". The Tenant shall not be required to pay a fee for any pet allowed on the Premises. The Tenant is responsible for all damage that any pet causes, regardless

encouraged to be provided and presented to the Landlord in writing in order to seek the most appropriate route for providing the modifications to the Premises.

**HAZARDOUS MATERIALS**: The Tenant agrees to not possess any type of personal property that could be considered a fire hazard such as a substance having flammable or explosive characteristics on the Premises. Items that are prohibited to be brought into the Premises, other than for everyday cooking or the need of an appliance, includes but is not limited to gas (compressed), gasoline, fuel, propane, kerosene, motor oil, fireworks, or any other related content in the form of a liquid, solid, or gas.

**WATERBEDS**: The Tenant is not permitted to furnish the Premises with waterbeds.

**INDEMNIFICATION**: To the extent permitted by law, Tenant agrees to indemnify, hold harmless, and defend Landlord from and against any and all losses, claims, liabilities, and expenses, including reasonable attorney fees, if any, which Landlord may suffer or incur in connection with Tenant's possession, use or misuse of the Premises, except Landlord's act or negligence. Tenant hereby expressly releases Landlord and/or Agent from any and all liability for loss or damage to Tenant's property or effects whether in the Premises, garage, storerooms or any other location in or about the Premises, arising out of any cause whatsoever, including but not limited to rain, plumbing leakage, fire or theft, except in the case that such damage has been adjudged to be the result of the gross negligence of Landlord, Landlord's employees, heirs, successors, assignees and/or Agents.

**SUBORDINATION OF LEASE:** This Lease is subordinate to any mortgage that now exists, or may be given later by Landlord, with respect to the Premises.

**COVENANTS**: The covenants and conditions herein contained shall apply to and bind the heirs, legal representatives, and assigns of the parties hereto, and all covenants are to be construed as conditions of this Agreement.

**NOTICES**: Any notice to be sent by the Landlord or the Tenant to each other shall use the following mailing addresses:

**Landlord's/Agent's Mailing Address**
John T Stroh
5533 Beacon Hill Drive, Frisco, Texas, 75036

**Tenant's Mailing Address**
Anna Marie Stroh
5533 Beacon Hill Drive, Frisco, Texas, 75036

**AGENT/MANAGER**: The Landlord does not have an Agent or Manager and all contact in regards to any repair, maintenance, or complaint must go through the Landlord through the following contact information:

Landlord's Phone Number: (214) 870-8647 Email: johntstroh65@gmail.com.

**PREMISES DEEMED UNINHABITABLE**: If the Property is deemed uninhabitable due to damage beyond reasonable repair the Tenant will be able to terminate this Agreement by written notice to the Landlord. If said damage was due to the negligence of the Tenant, the Tenant shall be liable to the Landlord for all repairs and for the loss of income due to restoring the Premises back to a livable condition in addition to any other losses that can be proved by the Landlord.

constitutes notice from the Tenant. In eviction suits, the Tenant is considered the agent of the Premise for the service of process.

**EARLY TERMINATION CLAUSE:** Tenant may, upon 30 days' written notice to Landlord, terminate this lease provided that the Tenant pays a termination charge equal to $0.00 or the maximum allowable by law, whichever is less. Termination will be effective as of the last day of the calendar month following the end of the 30 day notice period. Termination charge will be in addition to all rent due up to the termination day.

Tenant may not be responsible for early termination fees if the lease is terminated due to military orders as more fully described in Tex. Property Code Section 92.017 and MILITARY TERMINATION CLAUSE herein, family violence as more fully described in Tex. Property Code Section 92.016 or sex offenses as more fully described Tex. Property Code Section 92.0161.

**REMODELING OR STRUCTURAL IMPROVEMENTS:** Tenant shall be allowed to conduct construction or remodeling (at Tenant's expense) only with the prior written consent of the Landlord which shall not be unreasonably withheld. At the end of the lease term, Tenant shall be entitled to remove (or at the request of Landlord shall remove) any such fixtures, and shall restore the Premises to substantially the same condition that existed at the commencement of this Lease.

**DISPUTES**: If a dispute arises during or after the term of this Agreement between the Landlord and Tenant, they shall agree to hold negotiations amongst themselves, in "good faith", before any litigation.

**SEVERABILITY**: If any provision of this Agreement or the application thereof shall, for any reason and to any extent, be invalid or unenforceable, neither the remainder of this Agreement nor the application of the provision to other persons, entities or circumstances shall be affected thereby, but instead shall be enforced to the maximum extent permitted by law.

**SURRENDER OF PREMISES**: The Tenant has surrendered the Premises when (a) the move-out date has passed and no one is living in the Premise within the Landlord's reasonable judgment; or (b) Access to the Premise have been turned in to Landlord – whichever comes first. Upon the expiration of the term hereof, the Tenant shall surrender the Premise in better or equal condition as it were at the commencement of this Agreement, reasonable use, wear and tear thereof, and damages by the elements excepted.

**RETALIATION**: The Landlord is prohibited from making any type of retaliatory acts against the Tenant including but not limited to restricting access to the Premises, decreasing or cancelling services or utilities, failure to repair appliances or fixtures, or any other type of act that could be considered unjustified.

**WAIVER**: A Waiver by the Landlord for a breach of any covenant or duty by the Tenant, under this Agreement is not a waiver for a breach of any other covenant or duty by the Tenant, or of any subsequent breach of the same covenant or duty. No provision of this Agreement shall be considered waived unless such a waiver shall be expressed in writing as a formal amendment to this Agreement and executed by the Tenant and Landlord.

**EQUAL HOUSING**: If the Tenant possess(es) any mental or physical impairment, the Landlord shall provide reasonable modifications to the Premises unless the modifications would be too difficult or expensive for the Landlord to provide. Any impairment of the Tenant is/are

of ownership of said pet and agrees to restore the property to its original condition at their expense. There shall be no limit on the weight of the pet. pounds (Lb.).

**NOISE/WASTE**: The Tenant agrees not to commit waste on the premises, maintain, or permit to be maintained, a nuisance thereon, or use, or permit the premises to be used, in an unlawful manner. The Tenant further agrees to abide by any and all local, county, and State noise ordinances.

**GUESTS**: There shall be no other persons living on the Premises other than the Tenant and any Occupant(s). Guests of the Tenant are allowed for periods not lasting for more than forty-eight hours unless otherwise approved by the Landlord.

**SMOKING POLICY**: Smoking on the Premises is prohibited on the entire property, including individual units, common areas, every building and adjoining properties.

**COMPLIANCE WITH LAW**: The Tenant agrees that during the term of the Agreement, to promptly comply with any present and future laws, ordinances, orders, rules, regulations, and requirements of the Federal, State, County, City, and Municipal government or any of their departments, bureaus, boards, commissions and officials thereof with respect to the premises, or the use or occupancy thereof, whether said compliance shall be ordered or directed to or against the Tenant, the Landlord, or both.

**DEFAULT**: If the Tenant fails to comply with any of the financial or material provisions of this Agreement, or of any present rules and regulations or any that may be hereafter prescribed by the Landlord, or materially fails to comply with any duties imposed on the Tenant by statute or State laws, within the time period after delivery of written notice by the Landlord specifying the non-compliance and indicating the intention of the Landlord to terminate the Agreement by reason thereof, the Landlord may terminate this Agreement. If the Tenant fails to pay rent when due and the default continues for the time-period specified in the written notice thereafter, the Landlord may, at their option, declare the entire balance (compiling all months applicable to this Agreement) of rent payable hereunder to be immediately due and payable and may exercise any and all rights and remedies available to the Landlord at law or in equity and may immediately terminate this Agreement.

The Tenant will be in default if: (a) Tenant does not pay rent or other amounts that are owed in accordance with respective State laws; (b) Tenant, their guests, or the Occupant(s) violate this Agreement, rules, or fire, safety, health, or criminal laws, regardless of whether arrest or conviction occurs; (c) Tenant abandons the Premises; (d) Tenant gives incorrect or false information in the rental application; (e) Tenant, or any Occupant(s) is arrested, convicted, or given deferred adjudication for a criminal offense involving actual or potential physical harm to a person, or involving possession, manufacture, or delivery of a controlled substance, marijuana, or drug paraphernalia under state statute; (f) any illegal drugs or paraphernalia are found in the Premises or on the person of the Tenant, guests, or Occupant(s) while on the Premises and/or; (g) as otherwise allowed by law.

**MULTIPLE TENANT OR OCCUPANT(S)**: Each individual that is considered a Tenant is jointly and individually liable for all of this Agreement's obligations, including but not limited to rent monies. If any Tenant, guest, or Occupant(s) violates this Agreement, the Tenant is considered to have violated this Agreement. Landlord's requests and notices to the Tenant or any of the Occupant(s) of legal age constitutes notice to the Tenant. Notices and requests from the Tenant or any one of the Occupant(s) (including repair requests and entry permissions)

**ENTIRE AGREEMENT**: This Agreement contains all the terms agreed to by the parties relating to its subject matter including any attachments or addendums. This Agreement replaces all previous discussions, understandings, and oral agreements. The Landlord and Tenant agree to the terms and conditions and shall be bound until the end of the Lease Term.

The parties have agreed and executed this agreement on August 20, 2022.

**LANDLORD(S) SIGNATURE**

Landlord's Signature _____ Date 8/20/22

John T Stroh

**TENANT SIGNATURE**

Tenant's Signature _____ Date 8/20/22

AnnaMarie Stroh

PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)
11-07-2022

**TREC**

**ONE TO FOUR FAMILY RESIDENTIAL CONTRACT (RESALE)**

NOTICE: Not For Use For Condominium Transactions

MARK SPAIN

1. **PARTIES:** The parties to this contract are _____ John Stroh _____ (Seller) and _____ Purchasing Fund 2023-2, LLC _____ (Buyer). Seller agrees to sell and convey to Buyer and Buyer agrees to buy from Seller the Property defined below.

2. **PROPERTY:** The land, improvements and accessories are collectively referred to as the Property (Property).
   A. LAND: Lot _____ 12 _____ Block _____ 33 _____ , _____ Stone Creek Village Ph 1 _____ Addition, City of _____ Frisco _____ , County of _____ Denton _____ Texas, known as _____ 5533 Beacon Hill Dr, Frisco, TX 75036 _____ (address/zip code), or as described on attached exhibit.
   B. IMPROVEMENTS: The house, garage and all other fixtures and improvements attached to the above-described real property, including without limitation, the following **permanently installed and built-in items**, if any: all equipment and appliances, valances, screens, shutters, awnings, wall-to-wall carpeting, mirrors, ceiling fans, attic fans, mail boxes, television antennas, mounts and brackets for televisions and speakers, heating and air-conditioning units, security and fire detection equipment, wiring, plumbing and lighting fixtures, chandeliers, water softener system, kitchen equipment, garage door openers, cleaning equipment, shrubbery, landscaping, outdoor cooking equipment, and all other property attached to the above described real property.
   C. ACCESSORIES: The following described related accessories, if any: window air conditioning units, stove, fireplace screens, curtains and rods, blinds, window shades, draperies and rods, door keys, mailbox keys, above ground pool, swimming pool equipment and maintenance accessories, artificial fireplace logs, security systems that are not fixtures, and controls for: (i) garage doors, (ii) entry gates, and (iii) other improvements and accessories. "Controls" includes Seller's transferable rights to the (i) software and applications used to access and control improvements or accessories, and (ii) hardware used solely to control improvements or accessories.
   D. EXCLUSIONS: The following improvements and accessories will be retained by Seller and must be removed prior to delivery of possession: _Movie Room A/V equipment, screen, Outside A/V equipment and mounts, Living room A/V equipment and speakers and mounts_
   E. RESERVATIONS: Any reservation for oil, gas, or other minerals, water, timber, or other interests is made in accordance with an attached addendum.

3. **SALES PRICE:**
   A. Cash portion of Sales Price payable by Buyer at closing ............................................. $ 1,047,200
      The term "Cash portion of the Sales Price" does not include proceeds from borrowing of any kind or selling other real property except as disclosed in this contract.
   B. Sum of all financing described in the attached: ☐ Third Party Financing Addendum,
      ☐ Loan Assumption Addendum, ☐ Seller Financing Addendum ................................. $ 0
   C. Sales Price (Sum of A and B) ........................................................................ $ 1,047,200

4. **LEASES:** Except as disclosed in this contract, Seller is not aware of any leases affecting the Property. After the Effective Date, Seller may not, without Buyer's written consent, create a new lease, amend any existing lease, or convey any interest in the Property. (Check all applicable boxes)
   ☐ A. RESIDENTIAL LEASES: The Property is subject to one or more residential leases and the Addendum Regarding Residential Leases is attached to this contract.
   ☐ B. FIXTURE LEASES: Fixtures on the Property are subject to one or more fixture leases (for example, solar panels, propane tanks, water softener, security system) and the Addendum Regarding Fixture Leases is attached to this contract.
   ☐ C. NATURAL RESOURCE LEASES: "Natural Resource Lease" means an existing oil and gas, mineral, water, wind, or other natural resource lease affecting the Property to which Seller is a party.
      ☐ (1) Seller has delivered to Buyer a copy of all the Natural Resource Leases.
      ☐ (2) Seller has not delivered to Buyer a copy of all the Natural Resource Leases. Seller shall provide to Buyer a copy of all the Natural Resource Leases within 3 days after the Effective Date. Buyer may terminate the contract within _____ days after the date the Buyer receives all the Natural Resource Leases and the earnest money shall be refunded to Buyer.

TXR-1601          Initialed for identification by Buyer __kt__ and Seller _____          TREC NO. 20-17

DocuSign Envelope ID: DC567824-123D-44DB-B8D1-0D6D972619B7

5. **EARNEST MONEY AND TERMINATION OPTION:**
   A. **DELIVERY OF EARNEST MONEY AND OPTION FEE:** Within 3 days after the Effective Date, Buyer must deliver to Homeward Title (Escrow Agent) at 1001 S. Capital of TX HWY, Bldg I, Suite 100, Austin, TX 78746 / Team@homewardtitle.com (address): $ 1,000 as earnest money and $ 10 as the Option Fee. The earnest money and Option Fee shall be made payable to Escrow Agent and may be paid separately or combined in a single payment.
      (1) Buyer shall deliver additional earnest money of $ 0 to Escrow Agent within _____ days after the Effective Date of this contract.
      (2) If the last day to deliver the earnest money, Option Fee, or the additional earnest money falls on a Saturday, Sunday, or legal holiday, the time to deliver the earnest money, Option Fee, or the additional earnest money, as applicable, is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.
      (3) The amount(s) Escrow Agent receives under this paragraph shall be applied first to the Option Fee, then to the earnest money, and then to the additional earnest money.
      (4) Buyer authorizes Escrow Agent to release and deliver the Option Fee to Seller at any time without further notice to or consent from Buyer, and releases Escrow Agent from liability for delivery of the Option Fee to Seller. The Option Fee will be credited to the Sales Price at closing.
   B. **TERMINATION OPTION:** For nominal consideration, the receipt of which Seller acknowledges, and Buyer's agreement to pay the Option Fee within the time required, Seller grants Buyer the unrestricted right to terminate this contract by giving notice of termination to Seller within 10 days after the Effective Date of this contract (Option Period). Notices under this paragraph must be given by 5:00 p.m. (local time where the Property is located) by the date specified. If Buyer gives notice of termination within the time prescribed: (i) the Option Fee will not be refunded and Escrow Agent shall release any Option Fee remaining with Escrow Agent to Seller; and (ii) any earnest money will be refunded to Buyer.
   C. **FAILURE TO TIMELY DELIVER EARNEST MONEY:** If Buyer fails to deliver the earnest money within the time required, Seller may terminate this contract or exercise Seller's remedies under Paragraph 15, or both, by providing notice to Buyer before Buyer delivers the earnest money.
   D. **FAILURE TO TIMELY DELIVER OPTION FEE:** If no dollar amount is stated as the Option Fee or if Buyer fails to deliver the Option Fee within the time required, Buyer shall not have the unrestricted right to terminate this contract under this paragraph 5.
   E. **TIME: Time is of the essence for this paragraph and strict compliance with the time for performance is required.**
6. **TITLE POLICY AND SURVEY:**
   A. **TITLE POLICY:** Seller shall furnish to Buyer at ☑ Seller's ☐ Buyer's expense an owner policy of title insurance (Title Policy) issued by Homeward Title (Title Company) in the amount of the Sales Price, dated at or after closing, insuring Buyer against loss under the provisions of the Title Policy, subject to the promulgated exclusions (including existing building and zoning ordinances) and the following exceptions:
      (1) Restrictive covenants common to the platted subdivision in which the Property is located.
      (2) The standard printed exception for standby fees, taxes and assessments.
      (3) Liens created as part of the financing described in Paragraph 3.
      (4) Utility easements created by the dedication deed or plat of the subdivision in which the Property is located.
      (5) Reservations or exceptions otherwise permitted by this contract or as may be approved by Buyer in writing.
      (6) The standard printed exception as to marital rights.
      (7) The standard printed exception as to waters, tidelands, beaches, streams, and related matters.
      (8) The standard printed exception as to discrepancies, conflicts, shortages in area or boundary lines, encroachments or protrusions, or overlapping improvements:
      ☑ (i) will not be amended or deleted from the title policy; or
      ☐ (ii) will be amended to read, "shortages in area" at the expense of ☐ Buyer ☐ Seller.
      (9) The exception or exclusion regarding minerals approved by the Texas Department of Insurance.
   B. **COMMITMENT:** Within 20 days after the Title Company receives a copy of this contract, Seller shall furnish to Buyer a commitment for title insurance (Commitment) and, at Buyer's expense, legible copies of restrictive covenants and documents evidencing exceptions in the Commitment (Exception Documents) other than the standard printed exceptions. Seller authorizes the Title Company to deliver the Commitment and Exception Documents to Buyer at Buyer's address shown in Paragraph 21. If the Commitment and Exception Documents are not delivered to Buyer within the specified time, the time for delivery will be automatically extended up to 15 days or 3 days before the Closing Date, whichever is earlier. If the Commitment and Exception Documents are not delivered within the time required, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

DocuSign Envelope ID: DC557824-123D-44DB-B8D1-0D6D972619B7

C.  SURVEY: The survey must be made by a registered professional land surveyor acceptable to the Title Company and Buyer's lender(s). (Check one box only)

☐ (1)  Within _____ days after the Effective Date of this contract, Seller shall furnish to Buyer and Title Company Seller's existing survey of the Property and a Residential Real Property Affidavit promulgated by the Texas Department of Insurance (T-47 Affidavit). **If Seller fails to furnish the existing survey or affidavit within the time prescribed, Buyer shall obtain a new survey at Seller's expense no later than 3 days prior to Closing Date.** If the existing survey or affidavit is not acceptable to Title Company or Buyer's lender(s), Buyer shall obtain a new survey at ☐ Seller's ☐ Buyer's expense no later than 3 days prior to Closing Date.

☐ (2)  Within _____ days after the Effective Date of this contract, Buyer shall obtain a new survey at Buyer's expense. Buyer is deemed to receive the survey on the date of actual receipt or the date specified in this paragraph, whichever is earlier.

☑ (3)  Within _10_ days after the Effective Date of this contract, Seller, at Seller's expense shall furnish a new survey to Buyer.

D.  OBJECTIONS: Buyer may object in writing to defects, exceptions, or encumbrances to title: disclosed on the survey other than items 6A(1) through (7) above; disclosed in the Commitment other than items 6A(1) through (9) above; or which prohibit the following use or activity: _____.

Buyer must object the earlier of (i) the Closing Date or (ii) ___5___ days after Buyer receives the Commitment, Exception Documents, and the survey. Buyer's failure to object within the time allowed will constitute a waiver of Buyer's right to object; except that the requirements in Schedule C of the Commitment are not waived by Buyer. Provided Seller is not obligated to incur any expense, Seller shall cure any timely objections of Buyer or any third party lender within 15 days after Seller receives the objections (Cure Period) and the Closing Date will be extended as necessary. If objections are not cured within the Cure Period, Buyer may, by delivering notice to Seller within 5 days after the end of the Cure Period: (i) terminate this contract and the earnest money will be refunded to Buyer; or (ii) waive the objections. If Buyer does not terminate within the time required, Buyer shall be deemed to have waived the objections. If the Commitment or survey is revised or any new Exception Document(s) is delivered, Buyer may object to any new matter revealed in the revised Commitment or survey or new Exception Document(s) within the same time stated in this paragraph to make objections beginning when the revised Commitment, survey, or Exception Document(s) is delivered to Buyer.

E.  TITLE NOTICES:

(1)  ABSTRACT OR TITLE POLICY: Broker advises Buyer to have an abstract of title covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or obtain a Title Policy. If a Title Policy is furnished, the Commitment should be promptly reviewed by an attorney of Buyer's choice due to the time limitations on Buyer's right to object.

(2)  MEMBERSHIP IN PROPERTY OWNERS ASSOCIATION(S): The Property ☑ is ☐ is not subject to mandatory membership in a property owners association(s). If the Property is subject to mandatory membership in a property owners association(s), Seller notifies Buyer under §5.012, Texas Property Code, that, as a purchaser of property in the residential community identified in Paragraph 2A in which the Property is located, you are obligated to be a member of the property owners association(s). Restrictive covenants governing the use and occupancy of the Property and all dedicatory instruments governing the establishment, maintenance, or operation of this residential community have been or will be recorded in the Real Property Records of the county in which the Property is located. Copies of the restrictive covenants and dedicatory instruments may be obtained from the county clerk. <u>You are obligated to pay assessments to the property owners association(s). The amount of the assessments is subject to change. Your failure to pay the assessments could result in enforcement of the association's lien on and the foreclosure of the Property.</u>

Section 207.003, Property Code, entitles an owner to receive copies of any document that governs the establishment, maintenance, or operation of a subdivision, including, but not limited to, restrictions, bylaws, rules and regulations, and a resale certificate from a property owners' association. A resale certificate contains information including, but not limited to, statements specifying the amount and frequency of regular assessments and the style and cause number of lawsuits to which the property owners' association is a party, other than lawsuits relating to unpaid ad valorem taxes of an individual member of the association. These documents must be made available to you by the property owners' association or the association's agent on your request. **If Buyer is concerned about these matters, the TREC promulgated Addendum for Property Subject to Mandatory Membership in a Property Owners Association(s) should be used.**

(3)  STATUTORY TAX DISTRICTS: If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services, Chapter 49, Texas Water Code, requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fee of the district prior to final execution of this contract.

(4) TIDE WATERS: If the Property abuts the tidally influenced waters of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included in the contract. An addendum containing the notice promulgated by TREC or required by the parties must be used.

(5) ANNEXATION: If the Property is located outside the limits of a municipality, Seller notifies Buyer under §5.011, Texas Property Code, that the Property may now or later be included in the extraterritorial jurisdiction of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and extraterritorial jurisdiction. To determine if the Property is located within a municipality's extraterritorial jurisdiction or is likely to be located within a municipality's extraterritorial jurisdiction, contact all municipalities located in the general proximity of the Property for further information.

(6) PROPERTY LOCATED IN A CERTIFICATED SERVICE AREA OF A UTILITY SERVICE PROVIDER: Notice required by §13.257, Water Code: The real property, described in Paragraph 2, that you are about to purchase may be located in a certificated water or sewer service area, which is authorized by law to provide water or sewer service to the properties in the certificated area. If your property is located in a certificated area there may be special costs or charges that you will be required to pay before you can receive water or sewer service. There may be a period required to construct lines or other facilities necessary to provide water or sewer service to your property. You are advised to determine if the property is in a certificated area and contact the utility service provider to determine the cost that you will be required to pay and the period, if any, that is required to provide water or sewer service to your property. The undersigned Buyer hereby acknowledges receipt of the foregoing notice at or before the execution of a binding contract for the purchase of the real property described in Paragraph 2 or at closing of purchase of the real property.

(7) PUBLIC IMPROVEMENT DISTRICTS: If the Property is in a public improvement district, Seller must give Buyer written notice as required by §5.014, Property Code. An addendum containing the required notice shall be attached to this contract.

(8) TRANSFER FEES: If the Property is subject to a private transfer fee obligation, §5.205, Property Code, requires Seller to notify Buyer as follows: The private transfer fee obligation may be governed by Chapter 5, Subchapter G of the Texas Property Code.

(9) PROPANE GAS SYSTEM SERVICE AREA: If the Property is located in a propane gas system service area owned by a distribution system retailer, Seller must give Buyer written notice as required by §141.010, Texas Utilities Code. An addendum containing the notice approved by TREC or required by the parties should be used.

(10) NOTICE OF WATER LEVEL FLUCTUATIONS: If the Property adjoins an impoundment of water, including a reservoir or lake, constructed and maintained under Chapter 11, Water Code, that has a storage capacity of at least 5,000 acre-feet at the impoundment's normal operating level, Seller hereby notifies Buyer: "The water level of the impoundment of water adjoining the Property fluctuates for various reasons, including as a result of: (1) an entity lawfully exercising its right to use the water stored in the impoundment; or (2) drought or flood conditions."

(11) REQUIRED NOTICES: The following notices have been given or are attached to this contract (for example, MUD, WCID, PID notices): _____

## 7.  PROPERTY CONDITION:

A. ACCESS, INSPECTIONS AND UTILITIES: Seller shall permit Buyer and Buyer's agents access to the Property at reasonable times. Buyer may have the Property inspected by inspectors selected by Buyer and licensed by TREC or otherwise permitted by law to make inspections. Any hydrostatic testing must be separately authorized by Seller in writing. Seller at Seller's expense shall immediately cause existing utilities to be turned on and shall keep the utilities on during the time this contract is in effect.

B. SELLER'S DISCLOSURE NOTICE PURSUANT TO §5.008, TEXAS PROPERTY CODE (Notice): (Check one box only)

☑ (1) Buyer has received the Notice.

☐ (2) Buyer has not received the Notice. Within _____ days after the Effective Date of this contract, Seller shall deliver the Notice to Buyer. If Buyer does not receive the Notice, Buyer may terminate this contract at any time prior to the closing and the earnest money will be refunded to Buyer. If Seller delivers the Notice, Buyer may terminate this contract for any reason within 7 days after Buyer receives the Notice or prior to the closing, whichever first occurs, and the earnest money will be refunded to Buyer.

☐ (3) The Seller is not required to furnish the notice under the Texas Property Code.

C. SELLER'S DISCLOSURE OF LEAD-BASED PAINT AND LEAD-BASED PAINT HAZARDS is required by Federal law for a residential dwelling constructed prior to 1978.

D. ACCEPTANCE OF PROPERTY CONDITION: "As Is" means the present condition of the Property with any and all defects and without warranty except for the warranties of title and the warranties in this contract. Buyer's agreement to accept the Property As Is under Paragraph 7D(1) or (2) does not preclude Buyer from inspecting the Property under Paragraph 7A, from negotiating repairs or treatments in a subsequent amendment, or from terminating this contract during the Option Period, if any.

(Check one box only)
- ☑ (1) Buyer accepts the Property As Is.
- ☐ (2) Buyer accepts the Property As Is provided Seller, at Seller's expense, shall complete the following specific repairs and treatments: _____

_____

(Do not insert general phrases, such as "subject to inspections" that do not identify specific repairs and treatments.)

E. **LENDER REQUIRED REPAIRS AND TREATMENTS:** Unless otherwise agreed in writing, neither party is obligated to pay for lender required repairs, which includes treatment for wood destroying insects. If the parties do not agree to pay for the lender required repairs or treatments, this contract will terminate and the earnest money will be refunded to Buyer. If the cost of lender required repairs and treatments exceeds 5% of the Sales Price, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

F. **COMPLETION OF REPAIRS AND TREATMENTS:** Unless otherwise agreed in writing, Seller shall complete all agreed repairs and treatments prior to the Closing Date and obtain any required permits. The repairs and treatments must be performed by persons who are licensed to provide such repairs or treatments or, if no license is required by law, are commercially engaged in the trade of providing such repairs or treatments. Seller shall: (i) provide Buyer with copies of documentation from the repair person(s) showing the scope of work and payment for the work completed; and (ii) at Seller's expense, arrange for the transfer of any transferable warranties with respect to the repairs and treatments to Buyer at closing. If Seller fails to complete any agreed repairs and treatments prior to the Closing Date, Buyer may exercise remedies under Paragraph 15 or extend the Closing Date up to 5 days if necessary for Seller to complete the repairs and treatments.

G. **ENVIRONMENTAL MATTERS:** Buyer is advised that the presence of wetlands, toxic substances, including asbestos and wastes or other environmental hazards, or the presence of a threatened or endangered species or its habitat may affect Buyer's intended use of the Property. If Buyer is concerned about these matters, an addendum promulgated by TREC or required by the parties should be used.

H. **RESIDENTIAL SERVICE CONTRACTS:** Buyer may purchase a residential service contract from a provider or administrator licensed by the Texas Department of Licensing and Regulation. If Buyer purchases a residential service contract, Seller shall reimburse Buyer at closing for the cost of the residential service contract in an amount not exceeding $ _____ . Buyer should review any residential service contract for the scope of coverage, exclusions and limitations. **The purchase of a residential service contract is optional. Similar coverage may be purchased from various companies authorized to do business in Texas.**

8. **BROKERS AND SALES AGENTS:**

A. **BROKER OR SALES AGENT DISCLOSURE:** Texas law requires a real estate broker or sales agent who is a party to a transaction or acting on behalf of a spouse, parent, child, business entity in which the broker or sales agent owns more than 10%, or a trust for which the broker or sales agent acts as a trustee or of which the broker or sales agent or the broker or sales agent's spouse, parent or child is a beneficiary, to notify the other party in writing before entering into a contract of sale. Disclose if applicable: _____

_____

B. **BROKERS' FEES:** All obligations of the parties for payment of brokers' fees are contained in separate written agreements.

9. **CLOSING:**

A. The closing of the sale will be on or before _February 1,_____ , _2024_____ , or within 7 days after objections made under Paragraph 6D have been cured or waived, whichever date is later (Closing Date). If either party fails to close the sale by the Closing Date, the non-defaulting party may exercise the remedies contained in Paragraph 15.

B. At closing:

(1) Seller shall execute and deliver a general warranty deed conveying title to the Property to Buyer and showing no additional exceptions to those permitted in Paragraph 6 and furnish tax statements or certificates showing no delinquent taxes on the Property.

(2) Buyer shall pay the Sales Price in good funds acceptable to the Escrow Agent.

(3) Seller and Buyer shall execute and deliver any notices, statements, certificates, affidavits, releases, loan documents, transfer of any warranties, and other documents reasonably required for the closing of the sale and the issuance of the Title Policy.

(4) There will be no liens, assessments, or security interests against the Property which will not be satisfied out of the sales proceeds unless securing the payment of any loans assumed by Buyer and assumed loans will not be in default.

(5) Private transfer fees (as defined by Chapter 5, Subchapter G of the Texas Property Code) will be the obligation of Seller unless provided otherwise in this contract. Transfer fees assessed by a property owners' association are governed by the Addendum for Property Subject to Mandatory Membership in a Property Owners Association.

DocuSign Envelope ID: DC567824-123D-44DB-B8D1-0D6D972619B7

Contract Concerning _____ 5533 Beacon Hill Dr, Frisco, TX 75036 _____ Page 6 of 11   11-07-2022
(Address of Property)

**10. POSSESSION:**

A. BUYER'S POSSESSION: Seller shall deliver to Buyer possession of the Property in its present or required condition, ordinary wear and tear excepted: ☑ upon closing and funding ☐ according to a temporary residential lease form promulgated by TREC or other written lease required by the parties. Any possession by Buyer prior to closing or by Seller after closing which is not authorized by a written lease will establish a tenancy at sufferance relationship between the parties. **Consult your insurance agent prior to change of ownership and possession because insurance coverage may be limited or terminated. The absence of a written lease or appropriate insurance coverage may expose the parties to economic loss.**

B. SMART DEVICES: "Smart Device" means a device that connects to the internet to enable remote use, monitoring, and management of: (i) the Property; (ii) items identified in any Non-Realty Items Addendum; or (iii) items in a Fixture Lease assigned to Buyer. At the time Seller delivers possession of the Property to Buyer, Seller shall:

(1) deliver to Buyer written information containing all access codes, usernames, passwords, and applications Buyer will need to access, operate, manage, and control the Smart Devices; and

(2) terminate and remove all access and connections to the improvements and accessories from any of Seller's personal devices including but not limited to phones and computers.

**11. SPECIAL PROVISIONS:** (This paragraph is intended to be used only for additional informational items. An informational item is a statement that completes a blank in a contract form, discloses factual information, or provides instructions. Real estate brokers and sales agents are prohibited from practicing law and shall not add to, delete, or modify any provision of this contract unless drafted by a party to this contract or a party's attorney.)

**12. SETTLEMENT AND OTHER EXPENSES:**

A. The following expenses must be paid at or prior to closing:

(1) Expenses payable by Seller (Seller's Expenses):

(a) Releases of existing liens, including prepayment penalties and recording fees; release of Seller's loan liability; tax statements or certificates; preparation of deed; one-half of escrow fee; and other expenses payable by Seller under this contract.

(b) Seller shall also pay an amount not to exceed $ _____ to be applied in the following order: Buyer's Expenses which Buyer is prohibited from paying by FHA, VA, Texas Veterans Land Board or other governmental loan programs, and then to other Buyer's Expenses as allowed by the lender.

(2) Expenses payable by Buyer (Buyer's Expenses): Appraisal fees; loan application fees; origination charges; credit reports; preparation of loan documents; interest on the notes from date of disbursement to one month prior to dates of first monthly payments; recording fees; copies of easements and restrictions; loan title policy with endorsements required by lender; loan-related inspection fees; photos; amortization schedules; one-half of escrow fee; all prepaid items, including required premiums for flood and hazard insurance, reserve deposits for insurance, ad valorem taxes and special governmental assessments; final compliance inspection; courier fee; repair inspection; underwriting fee; wire transfer fee; expenses incident to any loan; Private Mortgage Insurance Premium (PMI), VA Loan Funding Fee, or FHA Mortgage Insurance Premium (MIP) as required by the lender; and other expenses payable by Buyer under this contract.

B. If any expense exceeds an amount expressly stated in this contract for such expense to be paid by a party, that party may terminate this contract unless the other party agrees to pay such excess. Buyer may not pay charges and fees expressly prohibited by FHA, VA, Texas Veterans Land Board or other governmental loan program regulations.

**13. PRORATIONS:** Taxes for the current year, interest, rents, and regular periodic maintenance fees, assessments, and dues (including prepaid items) will be prorated through the Closing Date. The tax proration may be calculated taking into consideration any change in exemptions that will affect the current year's taxes. If taxes for the current year vary from the amount prorated at closing, the parties shall adjust the prorations when tax statements for the current year are available. If taxes are not paid at or prior to closing, Buyer shall pay taxes for the current year.

**14. CASUALTY LOSS:** If any part of the Property is damaged or destroyed by fire or other casualty after the Effective Date of this contract, Seller shall restore the Property to its previous condition as soon as reasonably possible, but in any event by the Closing Date. If Seller fails to do so due to factors beyond Seller's control, Buyer may (a) terminate this contract and the earnest money

DocuSign Envelope ID: DC567824-123D-44DB-B8D1-0D6D972619B7

Contract Concerning _____5533 Beacon Hill Dr. Frisco, TX 75036_____ Page 7 of 11   11-07-2022
(Address of Property)

will be refunded to Buyer (b) extend the time for performance up to 15 days and the Closing Date will be extended as necessary or (c) accept the Property in its damaged condition with an assignment of insurance proceeds, if permitted by Seller's insurance carrier, and receive credit from Seller at closing in the amount of the deductible under the insurance policy. Seller's obligations under this paragraph are independent of any other obligations of Seller under this contract.

15. **DEFAULT:** If Buyer fails to comply with this contract, Buyer will be in default, and Seller may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money as liquidated damages, thereby releasing both parties from this contract. If Seller fails to comply with this contract, Seller will be in default and Buyer may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money, thereby releasing both parties from this contract.

16. **MEDIATION:** It is the policy of the State of Texas to encourage resolution of disputes through alternative dispute resolution procedures such as mediation. Any dispute between Seller and Buyer related to this contract which is not resolved through informal discussion will be submitted to a mutually acceptable mediation service or provider. The parties to the mediation shall bear the mediation costs equally. This paragraph does not preclude a party from seeking equitable relief from a court of competent jurisdiction.

17. **ATTORNEY'S FEES:** A Buyer, Seller, Listing Broker, Other Broker, or Escrow Agent who prevails in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding.

18. **ESCROW:**

    A. ESCROW: The Escrow Agent is not (i) a party to this contract and does not have liability for the performance or nonperformance of any party to this contract, (ii) liable for interest on the earnest money and (iii) liable for the loss of any earnest money caused by the failure of any financial institution in which the earnest money has been deposited unless the financial institution is acting as Escrow Agent. Escrow Agent may require any disbursement made in connection with this contract to be conditioned on Escrow Agent's collection of good funds acceptable to Escrow Agent.

    B. EXPENSES: At closing, the earnest money must be applied first to any cash down payment, then to Buyer's Expenses and any excess refunded to Buyer. If no closing occurs, Escrow Agent may: (i) require a written release of liability of the Escrow Agent from all parties before releasing any earnest money; and (ii) require payment of unpaid expenses incurred on behalf of a party. Escrow Agent may deduct authorized expenses from the earnest money payable to a party. "Authorized expenses" means expenses incurred by Escrow Agent on behalf of the party entitled to the earnest money that were authorized by this contract or that party.

    C. DEMAND: Upon termination of this contract, either party or the Escrow Agent may send a release of earnest money to each party and the parties shall execute counterparts of the release and deliver same to the Escrow Agent. If either party fails to execute the release, either party may make a written demand to the Escrow Agent for the earnest money. If only one party makes written demand for the earnest money, Escrow Agent shall promptly provide a copy of the demand to the other party. If Escrow Agent does not receive written objection to the demand from the other party within 15 days, Escrow Agent may disburse the earnest money to the party making demand reduced by the amount of unpaid expenses incurred on behalf of the party receiving the earnest money and Escrow Agent may pay the same to the creditors. If Escrow Agent complies with the provisions of this paragraph, each party hereby releases Escrow Agent from all adverse claims related to the disbursal of the earnest money.

    D. DAMAGES: Any party who wrongfully fails or refuses to sign a release acceptable to the Escrow Agent within 7 days of receipt of the request will be liable to the other party for (i) damages; (ii) the earnest money; (iii) reasonable attorney's fees; and (iv) all costs of suit.

    E. NOTICES: Escrow Agent's notices will be effective when sent in compliance with Paragraph 21. Notice of objection to the demand will be deemed effective upon receipt by Escrow Agent.

19. **REPRESENTATIONS:** All covenants, representations and warranties in this contract survive closing. If any representation of Seller in this contract is untrue on the Closing Date, Seller will be in default. Unless expressly prohibited by written agreement, Seller may continue to show the Property and receive, negotiate and accept back up offers.

20. **FEDERAL TAX REQUIREMENTS:** If Seller is a "foreign person," as defined by Internal Revenue Code and its regulations, or if Seller fails to deliver an affidavit or a certificate of non-foreign status to Buyer that Seller is not a "foreign person," then Buyer shall withhold from the sales proceeds an amount sufficient to comply with applicable tax law and deliver the same to the Internal Revenue Service together with appropriate tax forms. Internal Revenue Service regulations require filing written reports if currency in excess of specified amounts is received in the transaction.

Contract Concerning _____ 5533 Beacon Hill Dr. Frisco, TX 75036 _____ Page 8 of 11   11-07-2022
(Address of Property)

21. **NOTICES:** All notices from one party to the other must be in writing and are effective when mailed to, hand-delivered at, or transmitted by fax or electronic transmission as follows:

To Buyer at: _____          To Seller at: _____

_____                         _____

Phone: _____                           Phone: _____

E-mail/Fax:  transactions@homeward.com            E-mail/Fax: _____

E-mail/Fax: _____                       E-mail/Fax: _____
With a copy to Buyer's agent at:                  With a copy to Seller's agent at:

_____                         _____

22. **AGREEMENT OF PARTIES:** This contract contains the entire agreement of the parties and cannot be changed except by their written agreement. Addenda which are a part of this contract are (Check all applicable boxes):

☐ Third Party Financing Addendum

☐ Seller Financing Addendum

☑ Addendum for Property Subject to Mandatory Membership in a Property Owners Association

☐ Buyer's Temporary Residential Lease

☐ Loan Assumption Addendum

☐ Addendum for Sale of Other Property by Buyer

☐ Addendum for Reservation of Oil, Gas and Other Minerals

☐ Addendum for "Back-Up" Contract

☐ Addendum for Coastal Area Property

☐ Addendum for Authorizing Hydrostatic Testing

☐ Addendum Concerning Right to Terminate Due to Lender's Appraisal

☐ Environmental Assessment, Threatened or Endangered Species and Wetlands Addendum

☐ Seller's Temporary Residential Lease

☐ Short Sale Addendum

☐ Addendum for Property Located Seaward of the Gulf Intracoastal Waterway

☐ Addendum for Seller's Disclosure of Information on Lead-based Paint and Lead-based Paint Hazards as Required by Federal Law

☐ Addendum for Property in a Propane Gas System Service Area

☐ Addendum Regarding Residential Leases

☐ Addendum Regarding Fixture Leases

☐ Addendum containing Notice of Obligation to Pay Improvement District Assessment

☑ Other (list):  Homeward Title Affiliated Business Disclosure
Homeward Offer Agreement & Homeward Term Sheet, Insert "A"

23. **CONSULT AN ATTORNEY BEFORE SIGNING:** TREC rules prohibit real estate brokers and sales agents from giving legal advice. READ THIS CONTRACT CAREFULLY.

Buyer's                                           Seller's
Attorney is: _____                      Attorney is: _____

_____                         _____

Phone: _____                           Phone: _____

Fax: _____                             Fax: _____

E-mail: _____                          E-mail: _____

TXR-1601          Initialed for identification by Buyer _____ and Seller _____          TREC NO. 20-17

DocuSign Envelope ID: DC567824-123D-44DB-B8D1-0D6D972619B7

EXECUTED the _____ day of ___12/22/2023_____ , _____ (Effective Date).
(BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)

DocuSigned by:

_Katie Collins, Authorized Signer_
Buyer
02DD9B78B75C4A3

DocuSigned by:

_(signature)_
Seller
8F9FA0FF7843448

Buyer _____

Seller _____



The form of this contract has been approved by the Texas Real Estate Commission. TREC forms are intended for use only by trained real estate license holders. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, (512) 936-3000 (http://www.trec.texas.gov) TREC NO. 20-17. This form replaces TREC NO. 20-16.

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com

DocuSign Envelope ID: DC567824-123D-44DB-B8D1-0D6D972619B7

## BROKER INFORMATION
(Print name(s) only. Do not sign)

|  |  |  |  |
|---|---|---|---|
|  |  | Mark Spain Real Estate | 789087 |
| Other Broker Firm | License No. | Listing Broker Firm | License No. |

represents ☐ Buyer only as Buyer's agent
☐ Seller as Listing Broker's subagent

represents ☐ Seller and Buyer as an intermediary
☑ Seller only as Seller's agent

|  |  |  |  |
|---|---|---|---|
|  |  | Elisha Holmes | 795487 |
| Associate's Name | License No. | Listing Associate's Name | License No. |

| Team Name |  | Team Name |  |
|---|---|---|---|
|  |  | elishaholmes@markspain.com | (214) 399-6773 |
| Associate's Email Address | Phone | Listing Associate's Email Address | Phone |

|  |  |  |  |
|---|---|---|---|
|  |  | Jessica Montoya | 652388 |
| Licensed Supervisor of Associate | License No. | Licensed Supervisor of Listing Associate | License No. |

|  |  |  |  |
|---|---|---|---|
|  |  | 550 Reserve St., Ste, 190 | 855 2997 653 |
| Other Broker's Address | Phone | Listing Broker's Office Address | Phone |

|  |  |  |  |  |
|---|---|---|---|---|
|  |  | Southlake | TX | 76092 |
| City | State | Zip | City | State | Zip |

| Selling Associate's Name |  | License No. |
|---|---|---|

| Team Name |
|---|

| Selling Associate's Email Address |  | Phone |
|---|---|---|

| Licensed Supervisor of Selling Associate |  | License No. |
|---|---|---|

| Selling Associate's Office Address |
|---|

| City |  | State |  | Zip |
|---|---|---|---|---|

Disclosure: Pursuant to a previous, separate agreement (such as a MLS offer of compensation or other agreement between brokers), Listing Broker has agreed to pay Other Broker a fee (_____%  _____). This disclosure is for informational purposes and does not change the previous agreement between brokers to pay or share a commission.

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com

## OPTION FEE RECEIPT

Receipt of $ __$10 + $10__ (Option Fee) in the form of  INCOMING WIRE
is acknowledged

Diana King Leon by Surbhi Dua

diana.king@homewardtitle.com       January 4, 2024

Escrow Agent                                                                                               Date

## EARNEST MONEY RECEIPT

Receipt of $ __1,000.00__ Earnest Money in the form of INCOMING WIRE
is acknowledged

Homeward Title, LLC Diana King Leon by Surbhi Dua       diana.king@homewardtitle.com       January 4, 2024

Escrow Agent                        Received by        Email Address                                Date/Time

1001 South Capital of Texas Hwy, Bldg I, Ste 100

Address                                                                                                      512-598-6282

                                                                                                                    Phone

Austin                              TX                    78784                                          512-537-2757

City                                 State                 Zip                                                Fax

## CONTRACT RECEIPT

Receipt of the Contract is acknowledged.

Homeward Title, LLC by Surbhi Dua                       team@homewardtitle.com       January 4, 2024

Escrow Agent                        Received by        Email Address                                Date

1001 South Capital of Texas Hwy, Bldg I, Ste 100

Address                                                                                                      512-598-6282

                                                                                                                    Phone

Austin                              TX                    78784                                          512-537-2757

City                                 State                 Zip                                                Fax

## ADDITIONAL EARNEST MONEY RECEIPT

Receipt of $_____ additional Earnest Money in the form of _____
is acknowledged.

Escrow Agent                        Received by        Email Address                                Date/Time

Address                                                                                                      Phone

City                                 State                 Zip                                                Fax

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com

# homeward

## Affiliated Business Arrangement Disclosure Statement

To: John Stroh
From: Purchasing Fund 2023-2, LLC ("Buyer")
Property Address: 5533 Beacon Hill Dr. Frisco, TX 75036

Date: December 22, 2023

This is to give you notice that Buyer has a business relationship with Homeward Title LLC. Homeward, Inc. owns, directly or indirectly, 100% of Buyer and 100% of Homeward Title Holdings, LLC. Homeward Title Holdings, LLC owns 100% of Homeward Title LLC. Because of these relationships, choosing to work with Homeward Title LLC may provide Buyer or Homeward, Inc. a financial or other benefit.

Set forth below is the estimated charge or range of charges for the settlement services listed. You are NOT required to use the listed provider(s) as a condition for settlement of your loan on or purchase, sale, or refinance of your new or current home. THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES.

| Homeward Title LLC (Texas) Description of Services | Range of Charges |
|---|---|
| Owner's Title Policy, or Loan Title Policy (not simultaneous with Owner's Policy) | Policy Premium: $1,300.00 - $9,900.00 (depends on the amount of insurance being purchased; see Texas Promulgated Rates – Tex Dept. of Insurance to determine exact premium) |
| Simultaneous Loan Title Policy | Policy Premium: $100.00 |
| Title Endorsements | Premium: $50 - $1,000 |
| Title Services & Closing Fees | $350 - $475 |
| Title Search | $0 - $425 |
| Tax Certificates | $59.80 - $79.80 |
| E-recording Charges | $4.00 - $10.00 |
| Release Tracking | $45.00 per release |

I/we have read this disclosure form, and understand that Buyer is referring me/us to purchase the above-described settlement service(s) and may receive a financial or other benefit as the result of this referral.

DocuSigned by: [signature]          12/22/2023
Seller                              Date          Seller          Date

*TX - PF/HWT ABAD - 7.29.22*

**homeward**

# Insert "A"

For Paragraph 12 (Settlement and Other Expenses) of
that One to Four Residential Contract (Resale) (the "**Contract**") between the
undersigned parties concerning property at

5533 Beacon Hill Dr, Frisco, TX 75036

(the "**Property**")

Notwithstanding anything to the contrary contained in the Contract, (i) the Earnest Money shall be Seller's sole remedy for Buyer's default, and (ii) Seller agrees that Buyer will not be liable for exemplary, special, incidental, consequential or punitive damages which arise directly or indirectly out of, or are in any way related to, the Contract and/or the purchase of the Property by Buyer, whether such damages are asserted in an action brought in contract, in tort or pursuant to some other theory.

OPTION PERIOD: The following sentence is added to the end of Section 5(B) of the Contract: "Notwithstanding anything to the contrary in this paragraph, if the last day of the Option Period falls on a Saturday, Sunday, or federal holiday, the Option Period is extended until the next day that is not a Saturday, Sunday, or federal holiday."

Homes with septic systems must be pumped and inspected by a licensed professional at least five days prior to Closing. Septic inspection must be clear of any defects or Seller must, at Seller's sole cost, repair any defects found in the inspection prior to Closing.

This offer shall expire three days after the date of Buyer's signature. If Seller does not deliver a fully executed contract to Buyer within three days after the date of Buyer's signature, Buyer's offer shall automatically expire at the end of such three-day period and there will not be a valid contract unless and until Seller and Buyer each execute a new contract.

[BUYER INITIAL] _____ [SELLER INITIAL] _____ [SELLER INITIAL] _____

DocuSign Envelope ID: DC567824-123D-44DB-B8D1-0D6D972619B7



PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)          11-07-2022

## ADDENDUM FOR PROPERTY SUBJECT TO MANDATORY MEMBERSHIP IN A PROPERTY OWNERS ASSOCIATION
(NOT FOR USE WITH CONDOMINIUMS)
ADDENDUM TO CONTRACT CONCERNING THE PROPERTY AT

**MARK SPAIN**

5533 Beacon Hill Dr, Frisco, TX 75036
(Street Address and City)

CMA
(Name of Property Owners Association, (Association) and Phone Number)

**A. SUBDIVISION INFORMATION:** "Subdivision Information" means: (i) a current copy of the restrictions applying to the subdivision and bylaws and rules of the Association, and (ii) a resale certificate, all of which are described by Section 207.003 of the Texas Property Code.
(Check only one box):

■ 1.  Within ___15___ days after the effective date of the contract, Seller shall obtain, pay for, and deliver the Subdivision Information to the Buyer. If Seller delivers the Subdivision Information, Buyer may terminate the contract within 3 days after Buyer receives the Subdivision Information or prior to closing, whichever occurs first, and the earnest money will be refunded to Buyer. If Buyer does not receive the Subdivision Information, Buyer, as Buyer's sole remedy, may terminate the contract at any time prior to closing and the earnest money will be refunded to Buyer.

☐ 2.  Within _____ days after the effective date of the contract, Buyer shall obtain, pay for, and deliver a copy of the Subdivision Information to the Seller. If Buyer obtains the Subdivision Information within the time required, Buyer may terminate the contract within 3 days after Buyer receives the Subdivision Information or prior to closing, whichever occurs first, and the earnest money will be refunded to Buyer. If Buyer, due to factors beyond Buyer's control, is not able to obtain the Subdivision Information within the time required, Buyer may, as Buyer's sole remedy, terminate the contract within 3 days after the time required or prior to closing, whichever occurs first, and the earnest money will be refunded to Buyer.

☐ 3.  Buyer has received and approved the Subdivision Information before signing the contract. Buyer ☐ does ☐ does not require an updated resale certificate. If Buyer requires an updated resale certificate, Seller, at Buyer's expense, shall deliver it to Buyer within 10 days after receiving payment for the updated resale certificate from Buyer. Buyer may terminate this contract and the earnest money will be refunded to Buyer if Seller fails to deliver the updated resale certificate within the time required.

☐ 4.  Buyer does not require delivery of the Subdivision Information.

The title company or its agent is authorized to act on behalf of the parties to obtain the Subdivision Information ONLY upon receipt of the required fee for the Subdivision Information from the party obligated to pay.

**B. MATERIAL CHANGES:** If Seller becomes aware of any material changes in the Subdivision Information, Seller shall promptly give notice to Buyer. Buyer may terminate the contract prior to closing by giving written notice to Seller if: (i) any of the Subdivision Information provided was not true; or (ii) any material adverse change in the Subdivision Information occurs prior to closing, and the earnest money will be refunded to Buyer.

**C. FEES AND DEPOSITS FOR RESERVES:** Buyer shall pay any and all Association fees, deposits, reserves, and other charges associated with the transfer of the Property not to exceed $ ___0.00___ and Seller shall pay any excess. This paragraph does not apply to: (i) regular periodic maintenance fees, assessments, or dues (including prepaid items) that are prorated by Paragraph 13, and (ii) costs and fees provided by Paragraphs A and D.

**D. AUTHORIZATION:** Seller authorizes the Association to release and provide the Subdivision Information and any updated resale certificate if requested by the Buyer, the Title Company, or any broker to this sale. If Buyer does not require the Subdivision Information or an updated resale certificate, and the Title Company requires information from the Association (such as the status of dues, special assessments, violations of covenants and restrictions, and a waiver of any right of first refusal), ☐ Buyer ■ Seller shall pay the Title Company the cost of obtaining the information prior to the Title Company ordering the information.

**NOTICE TO BUYER REGARDING REPAIRS BY THE ASSOCIATION:** The Association may have the sole responsibility to make certain repairs to the Property. If you are concerned about the condition of any part of the Property which the Association is required to repair, you should not sign the contract unless you are satisfied that the Association will make the desired repairs.

12/22/2023

Buyer  _Katie Collins, Authorized Signer_                Seller  _[signature]_

Buyer  _____                Seller  _____

The form of this addendum has been approved by the Texas Real Estate Commission for use only with similarly approved or promulgated forms of contracts. Such approval relates to this contract form only. TREC forms are intended for use only by trained real estate licensees. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, (512) 936-3000 (www.trec.texas.gov) TREC No. 36-10. This form replaces TREC No. 36-9.

TXR-1922                                                      TREC NO. 36-10

Phone: (770) 886-9000        Fax: (678) 302-8723
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com

FILED
1/17/2024 8:38 AM
Judge James R. DePiazza - JP2
Denton County, Texas

E24-071J2

CASE NO. _____

| | | |
|---|---|---|
| John Stroh | § | **IN THE JUSTICE COURT** |
| **PLAINTIFF** | § | |
| **VS.** | § | **PRECINCT TWO** |
| Annamarie Stroh & all other occupants | § | |
| **DEFENDANT(S)** | § | **DENTON COUNTY, TEXAS** |

**PETITION: EVICTION CASE**

**COMPLAINT:** Plaintiff hereby complains of the Defendant(s) named above for eviction of Plaintiff's premises (including storerooms and parking areas) located in the above precinct. The address of the property is:

| 5533 Beacon Hill Drive | | Frisco | TX | 75036 |
|---|---|---|---|---|
| Street Address | Unit No. (if any) | City | State | Zip |

**Monthly rent is $**3,000.00_____ **and paid on the** 1st **day of the month with $**___0___ **subsidized by a Governmental entity.**

1. **GROUNDS FOR EVICTION:** Plaintiff alleges the following grounds for eviction:
   ☐ **Unpaid rent.** Defendant(s) failed to pay rent for the following time period(s):
   _____. **TOTAL DELINQUENT RENT AS OF DATE OF FILING IS:**
   $_____. Plaintiff reserves the right to orally amend the amount at trial to include rent due from the date of filing through the date of trial.
   ☑ **Other lease violations.** Defendant(s) breached the terms of the lease (other than by failing to pay rent) as follows:
   not paying utilities & not providing any access/ right of entry to the landlord._____
   ☐ **Holdover.** Defendant(s) are unlawfully holding over by failing to vacate at the end of the rental term or renewal of extension period, which was the _____ day of _____, 20_____.

2. **NOTICE TO VACATE:** Plaintiff has given Defendant(s) a **required** written notice to vacate (according to Chapter 24.005 of the Texas Property Code) and demand for possession. Such notice was delivered on the 29 day of December , 2023 by this method: overnight & first class mail _____.

3. **SUIT FOR RENT:** Plaintiff ☐ does or ☑ does not include a suit for unpaid rent.

4. **ATTORNEY'S FEES:** Plaintiff ☐ will be or ☑ will not be seeking applicable attorney's fees. The attorney's name, address, phone and fax numbers are: _____

5. **SERVICE OF CITATION:** Service is requested on Defendant(s) by: personal service at home or work, or by alternative service as allowed by the Texas Rules of Civil Procedure. Other Denton County addresses where Defendant(s) may be served are: _____.

6. **RELIEF:** Plaintiff requests that Defendant(s) is served with the citation and that Plaintiff is awarded a judgment against Defendant(s) for: possession of the premises, including removal of Defendant(s) and Defendant's possessions from the premises, unpaid rent, if set forth above, attorney's fees, court costs, and interest on the above sums at the rate stated in the lease, or if not so stated, at the statutory rate for judgments.

☑ I hereby consent for the answer and any other motions or pleadings to be sent to my email address.

**Defendant's Information** (if known):

Date of birth: Apr 20, 1973 _____

Last three digits of Driver License: _____

Last three digits of Soc. Sec. No.: 323 _____

Phone No.: _____

My name is: Paige Butts / Agent / Texas Eviction _____

My Date of Birth is: 8/6/92 _____ My Address is:
12335 Kingsride Ln #141 Houston TX 77024

I declare under penalty of perjury, pursuant to the laws of the State of Texas, that all information provided is true and correct.

_____ /Agent

Signature of Plaintiff or Agent

Executed in Harris _____ County, Texas on _____

Phone: 281-571-7151 _____ FAX: 281-402-1162 _____

Email Address: FILE@TEXASEVICTION.COM _____

Case Number: _____

John Stroh
_____
**VS**
Annamarie Stroh & all other occupants
_____

§   **IN THE JUSTICE COURT**
§   **PRECINCT TWO**
§   **DENTON COUNTY, TEXAS**

## CERTIFICATE OF LAST KNOWN ADDRESS

I hereby certify that the last known address of Defendant, in the above-entitled and numbered
cause is:

5533 Beacon Hill Drive Frisco TX, 75036
_____

_____

_____

## *CERTIFICATE OF SERVICE*

*I do hereby certify that I notified the Defendant of the* **default hearing**

☐ *in person* ☐ *by Certified or Registered Mail* ☐ *by Courier* ☐ *by Fax* ☐ *by Email*

*on the* _____ *day of* _____, 20 _____.

DATED this ⎯⎯ day of ___JAN___, 20 22

_____
Plaintiff (signature) /Agent

E24-071J2

NO. _____

John Stroh
_____

)(      **IN THE JUSTICE COURT**
)(
)(      **PRECINCT TWO**

**VS.**
Annamarie Stroh & all other occupants
_____

)(
)(
)(      **DENTON COUNTY, TEXAS**

## SERVICE MEMBERS CIVIL RELIEF ACT AFFIDAVIT

**STATE OF TEXAS**    )(
**COUNTY OF DENTON**    )(

**I understand that any false statements in this document are made under penalty of perjury, and that making a false statement is a violation of Federal Law and is subject to both fine and imprisonment.**

I am over the age of eighteen (18) years and am competent to make this affidavit. I am the
☑ Plaintiff
❑ Plaintiff's agent
in the above-entitled and numbered matter.

I have made a personal investigation and have attached the following documentation (required):
SCRA Website
_____

As a result of the investigation or review, it is my belief that the above-named defendant

❑ is not in the military service on active duty, and is not a dependent of a servicemember on active duty
❑ is in the military service on active duty
❑ I have been unable to determine whether or not the defendant is in the military service on active duty

My name is: Paige Butts / Agent / Texas Eviction
_____

My Date of Birth is: 8/6/92 _____ My Address is:

12335 Kingsride Ln #141 Houston TX 7024
_____

I declare under penalty of perjury, pursuant to the laws of the State of Texas, and that making a false statement is a violation of Federal Law, that all information provided is true and correct.

Affiant Signature: /s/ _____ /Agent

Executed in Harris _____ County, Texas on _____

Phone: 281-571-7151 _____ FAX: 281-402-1162

Email Address: FILE@TEXASEVICTION.COM



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

SSN:            XXX-XX-9323
Birth Date:     Apr-XX-1973
Last Name:      STROH
First Name:     ANNAMARIE
Middle Name:
Status As Of:   Jan-17-2024
Certificate ID: YTLN75X4RKT4M9Q

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, Space Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Sam Yousefzadeh*

Sam Yousefzadeh, Director
Department of Defense - Manpower Data Center
4800 Mark Center Drive, Suite 04E25
Alexandria, VA 22350



**12335 Kingsride Lane #141**
**Houston, Texas 77024**

December 29, 2023

Annamarie Stroh & All Other Occupants
5533 Beacon Hill Drive
Frisco, TX 75036

### Re: 3 Day Notice to Vacate

Submitted on behalf of the Landlord, **John Stroh**, by Texas Eviction.

The purpose of this letter is to ask you to leave the premises now in your possession, situated in **Denton**

**County**, Texas, and known as **5533 Beacon Hill Drive, Frisco, TX 75036** together with the lot of

land on which these premises are located. You are being asked to leave for the following reason: **Failure**

**to Cure Breach:**

 **You have not made any payment or reimbursed the landlord for the utilities exceeding**

**$4,000 . The landlord has provided and informed  you of the incurred utility costs.**


**You have not provided any access/ right of entry to the landlord.**

Your compliance with this notice within 3 days will prevent any further eviction action against you.

DEMAND FOR POSSESSION IS HEREBY MADE. YOU ARE HEREBY GIVEN NOTICE TO

VACATE THE DWELLING ON OR BEFORE 11:59 PM ON JANUARY 5, 2024 . IF YOU DO NOT

LEAVE, AN EVICTION ACTION SHALL BE INITIATED AGAINST YOU. IF YOU ARE IN DOUBT

REGARDING YOUR LEGAL RIGHTS AND OBLIGATIONS AS A TENANT, IT IS

RECOMMENDED THAT YOU SEEK LEGAL ASSISTANCE.


Yours respectfully,

**Texas Eviction**


**NOTICE WAS GIVEN BY THE METHOD CHECKED BELOW:**

☑ **REGULAR MAIL**   ☐ **CERTIFIED/RETURN RECEIPT**   ☑ **USPS PRIORITY OVERNIGHT**